Filed 8/5/14

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| In re E.M. et al., Minors. | D064955 |
|---|---|
| JAMES J. et al., | |
| Petitioners and Appellants, | (Super. Ct. No. JA58820) |
| v. | |
| CHRISTOPHER M., | |
| Objector and Respondent. | |

APPEAL from a judgment and orders of the Superior Court of San Diego County,

Carolyn M. Caietti and Cynthia A. Bashant, Judges.  Affirmed.


Marcus Family Law Center, Erin K. Tomlinson and Ethan J. Marcus for

Petitioners and Appellants.

Law Offices of Farah F. Azar and Farah F. Azar for Objector and Respondent.

Monica Vogelmann, under appointment by the Court of Appeal, for Minors.

James J. and Sarah J. appeal the denial of their petition to declare Sarah's three children free from the custody and control of the children's father, Christopher M. (Fam. Code, § 7822.)[1] James and Sarah also contend that the court did not have jurisdiction to issue a temporary visitation order allowing Christopher to have supervised visitation with the children during the pendency, or upon dismissal, of the petition to terminate parental rights under section 7822. Finally, they contest the order directing them to pay Christopher's attorney fees. Christopher requests that we dismiss this appeal as frivolous and impose sanctions. We affirm the findings and orders of the court, and deny Christopher's request for sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

Sarah and Christopher married in 2006. Their three children were born in 2006, 2007 and 2011. Sarah and Christopher separated in July 2011, in part because of Christopher's drug use. A short time later, Sarah and the children moved into James's home. The children visited Christopher on weekends.

In December 2011, the children stayed with Christopher for a week while Sarah and James were on vacation in a foreign country. Christopher was drinking heavily during this time. In a series of e-mails to Sarah, he said that he was not fit to have the children in his care, that they would be better off without him, and that he would give Sarah full custody of the children. Sarah told Christopher that he needed to take a break from seeing the children.

---

[1] Unless otherwise indicated, statutory references are to the Family Code.

2

Sarah filed for divorce in January 2012. Christopher agreed that Sarah would have sole physical and legal custody of the children, subject to his liberal and reasonable visitation rights, which were to be determined at Sarah's discretion. This agreement was embodied in the marital settlement agreement, which was incorporated into the judgment of dissolution of marriage. Christopher was ordered to pay child support in the amount of $4,913 a month beginning May 1, 2012.

Beginning in the spring of 2012, Sarah refused to communicate with Christopher. James told Christopher that he would have to be sober for 30 days before Sarah would consider allowing him to see the children. Christopher completed a detoxification program in June. In July, through her attorney, Sarah offered to allow Christopher one hour of supervised visitation per month once he successfully completed 90 days of sobriety. This schedule would continue for six months, after which Sarah would be willing to negotiate additional visitation for Christopher.

Sarah and James were married in September. In November, Christopher filed a request in the family court to modify custody, visitation and support orders or, in the alternative, to vacate the judgment of dissolution.

In January 2013, James and Sarah filed a petition to free the children from Christopher's custody and control, so that James could adopt the children (section 7822 petition). Their petition was filed under section 7822, subdivision (a)(3), which may apply when "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without

3

communication from the parent, with the intent on the part of the parent to abandon the child."  In a declaration, Sarah stated that Christopher had left his children in Sarah's sole custody and that he had had "no contact with the children since December 27, 2011 to the present nor any communication from the absent parent since February 14, 2012 (and only token attempts at communication prior to that date)" with the intent to abandon them. The petition further alleged that Christopher had not made any child support payments, other than token amounts, since May 1, 2012, and that any payments that he made to Sarah before that date had come from her share of community property income.

Christopher's request to modify custody and visitation orders was stayed pending final determination of the section 7822 proceedings.  (§ 7807.)[2]  Pursuant to San Diego County Local Rule 5.1.2(C), the section 7822 proceedings were heard in the Juvenile Division of the San Diego County Superior Court, not in the Family Court.  On March 8, 2013, Tina Jako, an adoptions social worker with the San Diego County Health and Human Services Agency (Agency), reported to the court that Sarah and James had not

---

[2]    Section 7807 provides that all proceedings affecting a child under specified provisions of Division 8 of the Family Code shall be stayed pending final determination of proceedings to declare the minor free from parental custody and control.  The specified Family Code provisions include child custody and visitation, and paternity actions. However, the family court retains jurisdiction to issue protective orders, including domestic violence orders.  (§ 7807, subds. (b) & (c).)

4

completed the necessary interviews for the stepparent adoption. The court[3] appointed

counsel for the children and set a hearing date on the petition for April 19, 2013.[4]

On April 12, Jako informed the court that Sarah and James had not completed all

of the necessary paperwork for the stepparent adoption and requested a continuance of

the hearing date. At the request of minors' counsel, the court issued an order for weekly

supervised visitation between Christopher and the children, conditioned on a showing

that Christopher was clean and sober. The court ordered Sarah to cooperate with the

intake process at the supervised visitation facility by April 19 so that Christopher's

visitation with the children could begin. The court continued the hearing on the section

7822 petition to May 31.

Christopher submitted a clean drug test to the court. Sarah refused to cooperate

with the intake and orientation for supervised visitation for Christopher. She also

unsuccessfully sought to have minors' counsel removed from the case.

---

[3]     Judge Carolyn M. Caietti heard and ruled on the pretrial motions.

[4]     Section 7870, subdivision (b) provides: "Notwithstanding any other provision of law, a proceeding to declare a child free from parental custody and control pursuant to this part shall be set for hearing not more than 45 days after the filing of the petition. If, at the time set for hearing, or at any continuance thereof, service has been completed and no interested person appears to contest, the court may issue an order based on the verified pleadings and any other evidence as may be submitted. If any interested person appears to contest the matter, the court shall set the matter for trial. The matter so set has precedence over all other civil matters on the date set for trial."

In May, Jako filed a report stating that she had been unable to complete her required investigation. Sarah and James had failed to complete the requirements for the stepparent adoption case and, as a consequence, Jako was unable to proceed.

Sarah filed a motion for reconsideration of the visitation order. She asserted that the court hearing the section 7822 petition lacked jurisdiction to make visitation orders. The court stayed its prior visitation order and ordered counsel to brief the issue.

After reviewing the parties' briefs and listening to argument, the court denied Sarah's motion. The court noted that the marital settlement agreement clearly contemplated that Christopher would have visitation with the children. Once the petitioners filed a section 7822 petition, the family court no longer had jurisdiction to make any visitation orders. However, section 7801 provides that statutes governing an action to free a child from a parent's custody and control are to be liberally construed. The court detailed Sarah and James's lack of cooperation with the social worker and noted that they had failed to complete the paperwork for the companion stepparent adoption case. In addition, the court observed that, at Sarah's request, the hearing on the section 7822 petition had been continued to September 27, to accommodate her pregnancy. According to the court, all of these factors had contributed to the delay in hearing the section 7822 petition, which by statute was to be held within 45 days of the filing of the petition. At the time of this hearing, it had been six months since the petition was filed. In addition, the court noted that minors' counsel was not requesting a change in legal or physical custody but rather, enforcement of the existing visitation order that

6

granted "liberal, reasonable and flexible rights of visitation" to Christopher, although at Sarah's sole discretion.

The court stated, "Obviously, this is an interim order depending on the outcome of the trial. If the petitioner's request is granted, [the interim] order would go away, and if it's not granted, then I believe you would go back to family court and litigate there." The court added that any current court-ordered visitation would not be used against petitioners in their attempt to show that Christopher had abandoned his children within the meaning of section 7822. The court modified its prior visitation order to delete the requirement that Sarah participate in the intake process at the visitation facility.

A trial on appellants' petition for freedom from custody and control was held on September 25, 27 and 30, 2013.[5] The court admitted in evidence social worker Jako's section 7822 report, which included the visitation supervisor's reports of Christopher's interactions with the children during visits, and took judicial notice of the other reports that Jako had filed in the case. The court also admitted in evidence various exhibits, including the parties' financial records and e-mails, social media posts and letters.

Jako reported that as of September 24, 2013, Sarah and James had not participated in the required interviews, nor had they completed the paperwork that was required for stepparent adoption. Jako believed that the allegations of abandonment under section 7822 could not be sustained. Although Christopher had not visited his children from December 28, 2011 to January 7, 2013, Jako could not conclude that Christopher

---

[5] Judge Cynthia A. Bashant presided at the trial on the section 7822 petition.

intended to abandon the children. According to Sarah, Christopher requested visitation and telephoned the children until March 2012. Christopher told Jako that he asked to visit the children every month and talked with them on the telephone regularly until mid-to late 2012. He hired an attorney in July 2012 and filed a motion for visitation in family court in November 2012. The fact that Christopher had contact with the children and asked to visit them during the statutory period precluded a determination that he had no communication with the children for a period of one year. Jako also concluded that there was no showing that Christopher had failed to provide financial support for the children for a one-year period. In addition, the two older children clearly remembered their father and wanted to have contact with him. In Jako's opinion, Christopher never intended to abandon his children, and adoption was not in the children's best interests.

Christopher acknowledged during his testimony that he had a serious substance abuse problem for many years, until 2000. He then maintained his sobriety for a period of eight years, after which he resumed using marijuana and then began using steroids. Christopher had been sober since June 1, 2012, and was regularly attending Alcohol Anonymous meetings. After Christopher and Sarah separated in July 2011, the children stayed with him on most weekends. He did not use drugs while they were in his care. However, he acknowledged that he was drinking heavily on December 27 and 28 while Sarah and James were out of the country and the children were in his care. Christopher acknowledged that, for a brief period at a time when he was deeply depressed, he thought that it would be better if he did not see the children.

8

Christopher testified that Sarah had access to his corporate business account for support until their divorce was final.6 She said that she needed $7,000 per month to support herself and the children. Christopher had made child support payments until July 2012, when he needed the funds to hire an attorney. He always maintained health insurance for the children. Between June 2011 and February 2013, he paid Sarah $78,591 in child support.

Sarah testified that when she and Christopher separated, they agreed that they would each receive $7,000 per month from their business. According to Sarah, the checks were marked "support" or "child support" for federal tax purposes, but they were not really child support payments. Instead, Sarah maintained, the funds were Sarah's share of community property income. Sarah said that Christopher did not make any child support payments between June and December 2012.

Sarah acknowledged that Christopher had asked to see the children every month from late December 2011 to late July 2013. She demanded that he provide sufficient proof of sobriety to her before she would agree to allow him to see the children. Christopher told Sarah that he was sober, but she did not believe him. Sarah acknowledged that she received an e-mail from Christopher in March 2012, in which he stated: "Sarah, I beg you, please allow me to have the kids every second weekend and

_____

6    Sarah owned approximately 25 percent of the shares in the corporation. She worked in the business until she and Christopher separated, at which time she reduced her work hours to approximately 5 percent of what they had been. However, Sarah continued to draw a payroll check for that work. She did not work in the business after the divorce.

the holiday weeks as laid out in your proposal." Sarah explained that she did not allow Christopher to see the children because she was waiting for him to provide a clean drug test and maintain his sobriety for an extended period of time.

The court found that Sarah and James's petition lacked merit. The court was "seriously concerned" that they had filed the section 7822 petition solely to delay a hearing on Christopher's petition for modification of the family court's custody and visitation orders. The court stated that the evidence clearly showed that Christopher had repeatedly tried to see his children during the last two years and concluded that, to the extent that Christopher had not seen his children during the last 18 months, Sarah had prevented him from doing so. In addition, there was insufficient evidence to show that Christopher had failed to pay any child support for a period of one year. The court found that it was not in the children's best interests to terminate Christopher's parental rights and dismissed the section 7822 petition, referred the case to the family court, and ordered that Judge Caietti's temporary visitation order remain in effect until modified by another court.

At a later date, the court granted Christopher's application for attorney fees, finding that Sarah and James had filed the section 7822 solely to delay the family court proceedings and to interfere with Christopher's visitation rights. The court stayed the order for payment of attorney fees pending resolution of this appeal.

10

DISCUSSION

I

FREEDOM FROM CUSTODY AND CONTROL

A.    The parties' contentions

Sarah and James contend that there is not substantial evidence to support the

court's finding that Christopher did not intend to abandon his children.  They argue that

Christopher clearly communicated his intent to abandon his children; that he made only

pretextual attempts to see the children after December 2011; and that he made only token

payments to support his children from January 6, 2012 to January 6, 2013.  Appellants

further argue that the court erred in failing to limit its inquiry into whether Christopher

intended to abandon his children to the year preceding the filing of the section 7822

petition, and instead relied on the actions that Christopher took after the petition was

filed, to support its finding that Christopher did not intend to abandon his children.

Christopher and minors' counsel contend that the court's findings are supported by

substantial evidence.

B.    Statement of law and standard of review

If a parent has left his or her child in the care and custody of the other parent for a

period of one year without any provision for the child's support, or without

communication from the parent, with the intent on the part of the parent to abandon the

child, a court may declare the child free from the parent's custody and control.  (§ 7822,

subd. (a)(3).)  The failure to provide support or the failure to communicate is presumptive

11

evidence of the intent to abandon.  If the parent has made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent. (§ 7822, subd. (b).)  A declaration of freedom from custody and control terminates all parental rights and responsibilities to the child.  (§ 7803.)

A finding of abandonment is appropriate where three main elements are met:  (1) the child must have been left with another; (2) without provision for support or without communication from the parent for the statutory period; and (3) with the intent on the part of the parent to abandon the child.  (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1010, citing *In re Cattalini* (1946) 72 Cal.App.2d 662, 665.)  " ' "In order to constitute abandonment there must be *an actual desertion*, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw off all obligations growing out of the same." ' "  (*In re Brittany H.* (1988) 198 Cal.App.3d 533, 549.)  The parent need not intend to abandon the child permanently; it is sufficient the parent had the intent to abandon the child during the statutory period.  (*Amy A., supra,* 132 Cal.App.4th at p. 67.)  " '[The] question whether such intent to abandon exists and whether it has existed for the statutory period is a question of fact for the trial court, to be determined upon all the facts and circumstances of the case.' "  (*In re Brittany H.*, at p. 550.)

As noted, a proceeding to declare a child free from parental custody and control pursuant to section 7822 is to proceed on an expedited basis.  The matter must be set for hearing not more than 45 days after the filing of the petition.  (§ 7870, subd. (b).)  "The

12

court may continue the proceeding for not to exceed 30 days as necessary to appoint counsel and to enable counsel to become acquainted with the case." (§ 7864.) A continuance of a section 7822 hearing may be granted only on a showing of good cause and only for that period of time shown to be necessary by the evidence considered at the hearing on the motion. (§ 7871.)

The reviewing court examines the record to determine whether there is substantial evidence to support the trial court's conclusions. (*In re Adoption of Allison C., supra,* 164 Cal.App.4th at p. 1010.) The reviewing court has no power to pass on the credibility of witnesses, resolve conflicts in the evidence or determine the weight of the evidence. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) It is the appellant's burden on review to show that the evidence is insufficient to support the trial court's findings. (*In re Adoption of Allison C.*, at p. 1011.)

C.     There is ample evidence to support the finding that Christopher did not intend to abandon his children

Appellants' brief "ignores the precept that all evidence must be viewed most favorably to [the prevailing party] and in support of the order." (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531 (*Davenport*).) Appellants ask this court to reweigh the evidence, which is not the function of the reviewing court. When an appellant attempts merely to reargue the " 'facts,' " the argumentative presentation violates the appellate rules noted above, and also "disregards the admonition that she is not to 'merely reassert [her] position at . . . trial.' " (*Ibid.*) "[S]uch 'factual presentation is

13

but an attempt to argue on appeal those factual issues decided adversely to [the party] at the trial level, contrary to established precepts of appellate review.' " (*Ibid*.)

The record contains ample evidence to support the trial court's finding that Christopher did not leave his children in the care and custody of the other parent for a period of one year without any provision for their support, with the intent to abandon the children.  (§ 7822.)  The record shows that Sarah received more than $18,000 in checks from the business that were marked as "support" or "child support" during the one-year statutory period preceding the filing of the section 7822 petition.  The court could reasonably reject Sarah's claim that those checks were marked as child support payments only for federal taxation purposes and instead merely represented her share of community property income.[7]  Sarah also received more than $9,700 in checks from the business that were not specifically marked as child support, during the statutory period.  In addition, Christopher continuously maintained health care insurance for the children at a cost of $560 a month.  Viewing the evidence in the light most favorable to the judgment,

---

[7]    Even if we were to accept Sarah's argument that these funds were her share of community property income, we would not be persuaded that there was sufficient evidence to show that Christopher left his children without provision for support.  The record shows that Sarah and Christopher were still married during this period and there was no court order for child support in effect.  Christopher continued to work and operate the business, while Sarah had drastically cut the hours that she worked in the business.  Christopher and Sarah agreed that they would each be entitled to receive $7,000 a month from the business pending the resolution of their divorce proceedings.

Section 7822 applies when a parent leaves his or her child "without any provision for the child's support."  The statute does not state that it applies when a parent fails to pay *child support*.  When, as here, a noncustodial parent makes arrangements to continue the custodial parent's income, that does not constitute a failure to leave a child without any provision for support within the meaning of section 7822.

14

Christopher provided approximately $44,480 in support to his children during the statutory period. We reject any argument that this is a token amount. The record thus contains substantial evidence to show that Christopher did not leave his children without making any provision for their support during the statutory period. (§ 7822.)

In addition, there is substantial evidence to show that Christopher communicated with the children during the statutory period and that he repeatedly asked Sarah to allow him to visit them. The record shows that Christopher regularly telephoned the children until mid-2012, approximately five to six months after the petition was filed. He testified that he asked to see the children numerous times during the statutory period. Sarah acknowledged that Christopher telephoned the children and asked to see them until March 2012. After that point in time, she refused to communicate with Christopher. When Christopher complied with Sarah's request that he maintain his sobriety for 30 days before she would allow the children to be in his care, she then demanded a 90-day period of sobriety, after which she would allow Christopher to have one hour of supervised visitation with the children per month. After Sarah imposed this condition, Christopher hired an attorney and filed a petition to modify the custody and visitation order.

We are not persuaded by appellants' argument that the court impermissibly relied on actions that Christopher took after they filed their section 7822 petition to support the finding that he did not intend to abandon his children. As discussed above, there is ample evidence to show that Christopher took affirmative steps to maintain his parental relationships with his children during the period of time that he was alleged to have

15

intended to abandon them. Appellants assert that the court did not limit its consideration of whether Christopher intended to abandon the children to the one-year period that preceded the filing of the section 7822 petition, which they contend is the relevant statutory period.[8] However, the record shows that the court found that Christopher had repeatedly attempted to see his children for the last two years, and that to the extent that he had not seen them during the last 18 months, this was solely because Sarah had prevented him from doing so. The court's findings clearly encompass the one-year statutory period at issue here, and include the one-year period immediately preceding the filing of the section 7822 petition. There is substantial evidence to support the court's findings.

The court reasonably concluded that the petitioners did not meet their burden to show, by clear and convincing evidence, that Christopher left the children with Sarah for a period of one year without any provision for support or without communicating with them and, thus, that he intended to abandon them within the meaning of section 7822.

II

*THE COURT DID NOT ABUSE ITS DISCRETION WHEN IT ISSUED*
*A TEMPORARY VISITATION ORDER*

A.      The parties' contentions

Sarah and James contend that the court did not have jurisdiction to issue a visitation order. (§ 7822.) They argue that section 7807 prohibits a court from making

---

8      We do not address whether the statutory period for abandonment under section 7822 is limited to the one year that immediately precedes the filing of the petition.

16

visitation and custody orders while a section 7822 proceeding is pending, and that there is no other statutory authority for such an order. Sarah and James contend that the court erred in issuing the interim visitation order while the section 7802 petition was pending, and further maintain that when the court ordered that the visitation order remain in effect upon dismissing the section 7822 petition, it did so without affording Sarah her due process right to notice and an opportunity to be heard.

In asserting that the court has the authority to issue visitation orders in a section 7822 proceeding, Christopher relies on provisions of the juvenile dependency scheme. However, that statutory scheme does not apply to proceedings under section 7822. (See *In re M.C.* (2011) 199 Cal.App.4th 784, 790; *In re Chantal S.* (1996) 13 Cal.4th 196, 200 ["Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code."].) A petition to free a child from the custody and control of a parent under section 7822 is not a dependency proceeding. Christopher also relies on California Rules of Court,[9] rule 5.2(g),[10] which states: "In the exercise of the court's jurisdiction under the Family Code, if the course of proceeding is not specifically indicated by statute or these rules, any suitable process or mode of proceeding may be adopted by the court that is consistent with the spirit of the Family Code and these rules."

---

[9]    Further rule references are to the California Rules of Court.

[10]    Christopher mistakenly cites rule 5.140, which was repealed effective January 1, 2013. The identical language is now found in rule 5.2(g), effective January 1, 2013.

17

Minors' counsel argues in her brief on appeal that the court properly ordered continued visitation between the children and their father when it dismissed the section 7822 petition. She implicitly agrees that the court acted in excess of its jurisdiction when it continued the temporary visitation order, but maintains that the order remains "valid but voidable."[11] (See *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661 [when a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is not void but merely voidable].) Minors' counsel contends that this court should not void the visitation order because it is in the children's best interests to maintain their relationships with their father, and the temporary visitation order does not offend public policy.

B.     The court did not act in excess of its jurisdiction when it issued a temporary visitation order

Appellants correctly state that there is no statutory authority that specifically authorizes a court that is hearing a section 7822 petition to issue a visitation order. We nevertheless conclude that *under the particular circumstances presented here*, the court did not act in excess of its jurisdiction when it issued a temporary visitation order during the proceedings and continued that order when it dismissed the petition.

"All courts have inherent powers that enable them to carry out their duties and ensure the orderly administration of justice. The inherent powers of courts are derived

---

11     At oral argument, minors' counsel argued that the trial court did not act in excess of its jurisdiction when it fashioned a limited visitation order while the section 7822 petition was pending.

from California Constitution, article VI, section 1, and are not dependent on statute."

(*Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 110; see Code Civ. Proc.,

§ 128, subd. (a)(8) [every court has the power to amend and control its process and orders

so as to make them conform to law and justice].)  However, the inherent authority of the

court may not be exercised in a manner that is inconsistent with, or contravenes, a statute.

(*Travelers Casualty & Surety Co. v. Superior Court* (2005) 126 Cal.App.4th 1131, 1144;

see rule 5.2(g) [court may adopt any suitable process or mode of proceeding that is

consistent with the spirit of the Fam. Code and the rules, provided that the course of

proceeding is not specifically indicated by statute or rule].)  Where a statute authorizes

the court to act within a prescribed procedure, and the court acts contrary to the authority

that has been conferred, it has exceeded its jurisdiction.[12]  (*In re Marriage of Jackson*,

*supra*, 136 Cal.App.4th at p. 988.)  This doctrine applies only where the clear purpose of

the statute is to restrict or limit the power of the court to act and where the effective

enforcement of such restrictions requires the use of the extraordinary writs of certiorari or

prohibition.  (*Id*. at p. 988, fn. 6.)

    We do not read section 7807 and related statutes as *clearly restricting* the power of

a court that is hearing a section 7822 petition to issue a temporary visitation order, when

---

[12]    "Lack of jurisdiction in the 'most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.  [Citation.]' "  (*In re Marriage of Jackson* (2006) 136 Cal.App.4th 980, 988.)  Any judgment or order rendered by a court lacking subject matter jurisdiction is void.  (*Ibid*.)  This is not the case here.  The court clearly had subject matter jurisdiction under section 7822.

19

such an order is necessary to ensure the orderly administration of justice. Section 7801 directs the court to liberally construe a Family Code action to terminate parental rights *to serve and protect the interests and welfare of the child*. (§ 7801.) Section 7807 provides in relevant part that the legislative findings stated in section 3020[13] and the authority to issue custody orders under section 3022[14] do not apply in a proceeding to declare a child free from his or her parent's custody and control. Section 3020 states that it is the public policy of California to assure that children have frequent and continuing contact with both parents, and to encourage parents to share the rights and responsibilities of child rearing, except where the contact would not be in the best interests of the child. (§ 3020, subd. (b).) Although section 7807 operates to restrict a court from issuing a *custody*

_____

[13]    Section 3020 states: "(a) The Legislature finds and declares that it is the public policy of this state to assure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interest of children when making any orders regarding the physical or legal custody or visitation of children. The Legislature further finds and declares that the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the child.

"(b) The Legislature finds and declares that it is the public policy of this state to assure that children have frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, or ended their relationship, and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy, except where the contact would not be in the best interest of the child, as provided in Section 3011.

"(c) Where the policies set forth in subdivisions (a) and (b) of this section are in conflict, any court's order regarding physical or legal custody or visitation shall be made in a manner that ensures the health, safety, and welfare of the child and the safety of all family members."

[14]    Section 3022 provides that "[t]he court may, during the pendency of a proceeding or at any time thereafter, make an order for the custody of a child during minority that seems necessary or proper."

20

order under section 3022 during a section 7822 proceeding, section 3022 does not refer to *visitation* orders. Where the Legislature refers to a particular statute containing a word or phrase, the omission of another word or phrase in that statute, or the lack of reference to another statute dealing with the same general subject matter, shows a different legislative intent. (Cf. *In re Jennings* (2004) 34 Cal.4th 254, 273.) Thus, although it is not the policy of the State of California to assure the child's frequent and continuing contact with a parent who is alleged to have abandoned the child, section 7807 does not *clearly restrict* a court from protecting that parent's visitation rights and ensuring the orderly administration of justice where the court believes that the judicial process is being used solely to delay the resolution of a family court action for custody or visitation.

The court characterized the petition to terminate Christopher's parental rights as "frivolous" and stated, "[I]t appears to me that this has just been one attempt to stall the father from having visitation, and that's a misuse of the court process to file a termination just to try to keep father from having visitation." The court's finding is amply supported by the record. Although Sarah expressed concern about her children's welfare to Christopher in an e-mail shortly after the December 2011 incident, she focused her comments on Christopher's shortcomings as a husband, including his use of community income to buy drugs and to support his mistress during Sarah's pregnancy with their youngest child. Sarah then set a series of escalating conditions that Christopher would have to meet before she would consider allowing him to see the children, and proposed to limit his contact with the children to one hour of supervised visitation per month even

21

after he proved to her that he had been sober for 90 days. In response, on November 1, 2012, Christopher filed a petition to modify the prior custody and visitation orders. Sarah and Christopher were ordered to attend mandatory child custody counseling on January 4, 2013, and a hearing was set in family court for January 31. Sarah and James then filed a section 7822 petition, which by statute stayed the family court proceedings. (§ 7807, subd. (b).)

On March 8, at the initial hearing on the section 7822 petition, the court appointed counsel for the children and set a hearing date on the petition for April 19. In March, April and May, social worker Jako reported to the court that Sarah and James had not completed the interviews and paperwork required for stepparent adoption. The court continued the hearing from April 19 to May 31, from May 31 to June 19 and from June 19 to September 25. At the time of the September hearing, Sarah and James still had not completed the interviews and paperwork that were required for stepparent adoption.

In addition to the delays caused by Sarah and James's lack of diligence in cooperating with the stepparent adoption process, the report of the visitation supervisor, which was made under penalty of perjury, raises serious concerns about Sarah's motive for filing the section 7822 petition. The report suggests that Sarah was attempting to undermine Christopher's relationships with the children, as well as the children's relationships with minors' counsel. On the children's first visit with Christopher in 18 months, five-year-old Abigail M. told him, "I love you. I almost cried one day because I missed you so much." The visitation supervisor reported that Christopher's parenting

22

style was "structuring, teaching, protecting and nurturing." The visits were generally very positive and the children were usually excited and happy to see their father. However, the two older children made comments that indicated that their mother was trying to undermine their relationships with their father. For example, at the first visit, Abigail said to Christopher, "Mommy said you didn't love us and that's why you didn't see us." E.M., who turned seven years old during the course of these proceedings, told Christopher, "Mommy said we have to call you Chris, but I like calling you daddy and I'll tell her that . . . ." When Christopher told his daughter that it was okay for her to call him daddy, she replied, "I like to call you daddy but don't tell mom cause I don't want to get in trouble." At the next visit, both children said that they did not like minors' counsel because she was trying to take them away from their mother. Abigail said, "[Minors' counsel] is going to tell the judge lies."

During a visit at the end of August, Sarah telephoned the visitation center director a few minutes after the visit had started and insisted that E.M. needed to be asked privately whether she wanted to continue the visit. Sarah asserted that E.M. was afraid of Christopher. Visitation center personnel checked on the children, who were sitting next to Christopher and playing a game with him. The director told Sarah that everything was fine. Sarah continued to insist that E.M. was being forced to visit with Christopher.

During the visit on September 20, which E.M. did not attend, Abigail called Christopher "Chris." Christopher told her, "You silly, I'm, daddy." Abigail then told him, "I have to call you Chris. It's the rules. Daddy, I mean Chris, it's the rules. I want

23

to call you daddy but I don't want to get in trouble. . . . I know why we can't call you 'daddy,' daddy, I mean Chris. I want to tell you but I can't." Christopher hugged his daughter, and told her, "It's ok. We're together now and we love each other[,] that's all that matters." Abigail rubbed her eyes with her fists and appeared to be crying. At the end of the visit, Abigail asked the visitation supervisor to tell her nanny that she had called her father "Chris" so that she would not get in trouble at home. The supervisor told Abigail that she did not have to say anything to the nanny because the visit was private. Abigail took the supervisor's hand, tugged on it, and said "please." The supervisor told the nanny that the visit had gone well and that Abigail had asked her to say that the name "Chris" was used. The nanny shrugged and said, "That's the parent."

When Judge Caietti ordered visitation in July 2013, she noted that the matter should have proceeded to a hearing on the petition within 45 days after the petition was filed. Instead, six months had elapsed because Sarah and James had not cooperated with the social worker and, as a result, the social worker had been unable to complete her section 7822 report, which was required by statute. In addition, the hearing had been postponed to September to accommodate Sarah's medical condition. Minors' counsel had requested visitation as being in the best interests of the children, who wanted to see their father. The court fashioned a *limited* visitation order, allowing Christopher to visit his children in a supervised setting for no more than two hours a week. The record supports findings that Sarah and James's lack of cooperation with the social worker was impeding the timely resolution of the section 7822 petition *and* that a visitation order was in the

24

children's best interests (§ 7890.)[15] Given section 7801's directive that the statutes governing petitions for freedom from custody and control be construed to serve and protect the interests and welfare of the child, the court did not act in excess of its jurisdiction when it issued a limited visitation order during the pendency of the section 7822 petition.

Further, the record clearly permits the reasonable inference that if the court had not ordered visitation to continue at the time it dismissed the section 7822 petition, Sarah would not have allowed Christopher to visit the children, thereby further undermining his relationships with the children while his motion to set aside prior custody and visitation orders was pending in the family court.

At oral argument on appeal, Sarah's counsel took the position that *no court* has jurisdiction to modify or enforce an existing visitation order, or to issue a temporary visitation order, during the pendency of a section 7822 proceeding. We reject this contention. As noted, section 7822 is to be liberally construed to serve and protect the interests and welfare of the child. (§ 7801.) In ruling on a section 7822 petition, the court is required to act in the best interests of the child. (§ 7890.) The plain language of section 7807 stays any proceedings for custody and visitation in the family court while an action to free a child from the parent's custody and control is pending. Thus, the court hearing a section 7822 petition under local rule is the *only* court with jurisdiction to act in

---

15      Section 7890 states that in a proceeding under section 7822, "the court shall consider the wishes of the child, bearing in mind the age of the child, and shall act in the best interest of the child."

the best interests of the child. To conclude that the court hearing a section 7822 petition has no authority to issue or implement an order that the court determines is in the children's best interests would contravene the principle that judicial proceedings that concern children, whether an action for custody, visitation, protection or termination of parental rights, have as their core value the best interests of the child. It necessarily follows that a court that has jurisdiction to hear an underlying matter concerning the child must also have, subject to some clearly delineated statutory limitations, the authority to issue orders to protect a child's welfare and well-being, including the authority to issue a temporary visitation order during the pendency of a section 7822 proceeding.

In view of delays in the section 7822 proceedings, the court could reasonably conclude that it was unlikely that a hearing on custody and visitation in family court would be held in a timely manner. The court has an obligation to serve and protect the interests of the child *and* to ensure the orderly administration of justice. (§ 7801; *Nickolas F. v. Superior Court*, *supra*, 144 Cal.App.4th at p. 110.) We conclude that the court did not act in excess of its jurisdiction when it dismissed the section 7822 petition and continued the temporary visitation order until further order of this court or the family court.

Finally, we are not persuaded by Sarah's argument that the court violated her procedural due process rights to notice and an opportunity to be heard when it continued the temporary visitation order upon dismissal of the section 7822 petition. The record shows that Sarah had a full and fair opportunity to litigate minors' counsel's request for

26

visitation in July 2013.  At the close of the hearing on the section 7822 petition, the court stated, "I'll refer the case back to Family Court for custody proceedings.  In the meantime, the visitation order by Judge Caietti remains in force and effect until either modified by Family Court or the Supreme Court or any other court that has control over the proceedings . . . ."  Sarah was present and represented by counsel when the court made its order.  She had the opportunity to be heard on the issue of the continuation of the temporary visitation order, but raised no objection to it.

In view of our conclusion that the court did not exceed its jurisdiction in issuing a temporary visitation order in connection with the section 7822 proceedings under the circumstances of this case, as well as the positive reports about Christopher's parenting by the visitation supervisor, the position of minors' counsel in favor of visitation, and the evidence of Sarah's efforts to impede the children's relationships with their father, any failure to relitigate the issue of visitation upon the dismissal of the section 7822 petition is harmless beyond a reasonable doubt.  (See *Chapman v. California* (1967) 386 U.S. 18, 24.)

### III

### *THE COURT PROPERLY EXERCISED ITS DISCRETION IN ORDERING PETITIONERS TO PAY CHRISTOPHER'S LEGAL FEES*

A.      Additional factual and procedural background and contentions on appeal

At the close of the section 7822 hearing, Christopher made an oral motion for an award of attorney fees and costs.  The court noted that the only motion before it at that

27

time was minors' counsel's request for the parents to equally share the costs of her services. The court declined to hear Christopher's motion at that time.

On October 17, Christopher filed a motion for attorney fees and costs. Detailing Sarah's attempts to impede his visitation, Christopher asserted that he was entitled to attorney fees and costs in the amount of $23,500 because Sarah and James had filed the section 7822 petition solely to delay the resolution of his request to modify custody, visitation, and support orders, which was pending in the family court.

Sarah and James filed a written opposition to the motion for attorney fees. They argued that they had filed the section 7822 petition in response to Christopher's substance abuse and neglect of the children, and his failure to support the children for an extended period. They also objected to the court's consideration of the motion for attorney fees on a number of procedural grounds, which we describe in detail below.

In making its findings on Christopher's motion for attorney fees, the court stated, "I've been hearing freedom from custody and control petitions now for about 12 years. I've heard hundreds of these cases, and I have to say that this particular petition has the least merit of any of them that I've heard." The court found that Sarah and James had filed the section 7822 petition solely to delay the family court proceedings and to prevent Christopher from visiting his children. The court said that it understood the procedural objections to the motion, but found that Sarah and James had sufficient notice of the motion and an opportunity to respond, and that they had in fact responded. The court

28

granted the motion for attorney fees and stayed its order pending resolution of this appeal.

Sarah and James challenge the court's finding that they filed their section 7822 petition solely to impede Christopher's visitation with the children. They also contend that Christopher's motion for attorney fees was defective because it was not filed on a mandatory court form and did not include an updated income and expense declaration, as required by rule 5.92(a); did not comply with notice requirements under Code of Civil Procedure section 1005, subdivision (b), which requires that service be made at least 16 days in advance of any court hearing; and was not properly served on the parties or counsel because it was sent via unapproved facsimile. They further contend that Code of Civil Procedure section 128.5 does not apply to cases filed after 1994.[16]

B.     Legal principles and standard of review

Section 271[17] " 'authorizes sanctions to advance the policy of promoting settlement of litigation and encouraging cooperation of the litigants' and 'does not require

---

[16]     "[Code of Civil Procedure section] 128.5[, subdivision] (a) does not authorize trial courts to impose sanctions for any form of litigation misconduct arising 'from a complaint filed, or a proceeding initiated' after December 31, 1994.' " (*Olmstead v. Arthur J. Gallagher & Co*. (2004) 32 Cal.4th 804, 819.) However, authorization to impose sanctions is now found in Code of Civil Procedure section 128.7. (*Olmstead,* at pp. 811, 813-814.) Because we conclude that the court did not err when it ordered sanctions under Family Code section 271, we need not address authorization for sanctions under any applicable provision of the Code of Civil Procedure.

[17]     "Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney

any actual injury.' [Citation.] Litigants who flout that policy by engaging in conduct that increases litigation costs are subject to imposition of attorney fees and costs as a section 271 sanction." (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225.) Section 271 does not specify the form of notice to be provided. The only *statutory* procedural requirement is " 'notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard.' (§ 271, subd. (b).)" (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1495.)

The imposition of sanctions under section 271 is committed to the sound discretion of the trial court. The trial court's order will be upheld on appeal unless the reviewing court, "considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." (*In re Marriage of Corona, supra,* 172 Cal.App.4th at pp. 1225-1226.)

---

furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award." (§ 271, subd. (a).)

"An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard." (*Id.*, subd. (b).)

30

C.    Substantive findings

Sarah and James contend that the court erred when it found that they filed their section 7822 petition solely to delay Christopher's visitation with his children.  Asserting that Sarah was credible and that Christopher committed perjury, they argue that the evidence supports the finding that Christopher intended to abandon the children and that the section 7822 petition was therefore not frivolous.  Appellants also assert that they were not responsible for the nine-month delay between the filing and the resolution of the section 7822 petition.  In support of this assertion, they point to a discussion with the court in May 2013 in which they "suggested" that the court could dismiss the proceedings if it believed that the proceedings were taking too long to complete.

Appellants' contentions are without merit.  Their briefing on this issue again disregards the rule that on review, we view all evidence in the light most favorable to the prevailing party.  (*Davenport*, *supra*, 194 Cal.App.4th at p. 1531.)  It is not the function of the reviewing court to decide questions of fact or credibility.  (*In re Zeth S.* (2003) 31 Cal.4th 396, 405; *Wilson v. State Personnel Bd.* (1976) 58 Cal.App.3d 865, 877.)  Appellants' assertion on appeal that they suggested that the court could dismiss the proceedings if the court believed that they were delaying the social worker's report is disingenuous insofar as the assertion is intended to imply that if the juvenile court had simply dismissed the section 7822 petition, that would have ended the matter.[18]  In fact,

_____

18    On May 24, 2013, the court found that it was necessary to delay the hearing due to Sarah's lack of cooperation with the Agency.

when the court expressed concern that the hearing on the petition would not occur within 45 days, as required under section 7870, appellants' attorney stated that the appropriate remedy was dismissal of the petition but added, "I oppose dismissal, especially when we have the trial right around the corner.  But that is the remedy. . . .  The dismissal would be without prejudice.  *My client can refile*.  And hopefully we would have all the information [for the social worker], and we can get it done within 45 days.  That's why you want to avoid doing it."  (Italics added.)  We reject appellants' argument that they should not be held responsible for payment of attorney fees under section 271 because they were not responsible for any delay.

The court did not abuse its discretion when it ordered Sarah and James to pay Christopher's attorney fees and costs.  As discussed in part II.B, *ante*, there is ample evidence to show that Sarah and James filed the section 7822 petition in order to impede Christopher's visitation with his children and to delay the resolution of his request to modify custody and visitation orders.

D.      Procedural objections

Sarah and James assert a number of procedural errors stemming from Christopher's lack of compliance with rule 5.92.[19]  Assuming, without deciding, that rule

_____

[19]     In relevant part, rule 5.92 states:  "(a)(1)  In a family law proceeding other than an action under the Domestic Violence Prevention Act or a local child support agency action under the Family Code, a notice of motion or order to show cause must be filed on a *Request for Order* (form FL-300), unless another Judicial Council form has been adopted or approved for the specific motion or order to show cause.  [¶] . . . [¶] (5)  A completed *Income and Expense Declaration* (form FL-150) or *Financial Statement (Simplified)*

5.92 applies to motions under section 271,[20] Sarah and James do not show, nor even attempt to show, that they were prejudiced by any alleged procedural deficiency. "Absent an explicit argument that a procedural error caused prejudice, we are under no obligation to address the claim of error." (*Quail Lakes Owners Assn. v. Kozina* (2012) 204 Cal.App.4th 1132, 1137.)

"The court must, in every stage of an action, disregard any error, improper ruling, instruction, or defect, in the pleadings or proceedings which, in the opinion of said court, does not affect the substantial rights of the parties. No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it

---

(form FL-155) must be filed with the *Request for Order* (form FL-300) when relevant to the relief requested unless a current form is on file with the court." (Adopted eff. July 1, 2012.)

[20]    In *Davenport*, the appellant asserted that the request for sanctions was improper because it was not on the required Judicial Council form and notice was improper. (*Davenport*, *supra*, 194 Cal.App.4th at p. 1529.) The reviewing court stated that "section 271 does not specify the form of notice to be provided." (*Ibid.*) All that is required is notice to the party against whom the sanction is sought and an opportunity for that party to be heard. (*Ibid.*) "The notice must also advise of the specific grounds and conduct for which the fees or sanctions are sought, and must be directed to the specific person against whom they are sought." (*Ibid.*) The reviewing court found that the respondent's motion, which was entitled "Respondent's Notice of Intention to Request Attorney Fees and Costs Pursuant to . . . Section 271," provided sufficient notice to the petitioner that respondent was seeking attorney fees under section 271. (*Davenport,* at p. 1529.)
        Christopher's motion was entitled "Respondent's Motion for Attorney Fees Pursuant to [Family Code] Section 271, & [Code of Civil Procedure] Section[] 128.5." His attached memorandum of points and authorities details the grounds on which the request was based, and includes an exhibit showing attorney fees and costs incurred to defend against the section 7822 action. Thus, like the motion for attorney fees and costs in *Davenport*, Christopher's motion provides sufficient notice to Sarah and James that he was seeking attorney fees under section 271.

33

shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (Code Civ. Proc., § 475; Cal. Const., art. VI, § 13 [no judgment will be set aside unless the court, after an examination of the entire cause, is of the opinion that the error has resulted in a miscarriage of justice].) A reviewing court may not reverse a judgment for a procedural error absent a miscarriage of justice. (*Quail Lakes Owners Assn. v. Kozina*, *supra*, 204 Cal.App.4th at p. 1137.)

Similarly, Sarah and James do not assert that they were prejudiced by any lack of compliance with notice requirements under Code of Civil Procedure section 1005, subdivision (b), or by improper service under Code of Civil Procedure section 1013, subdivision (e). Christopher served his motion for attorney fees on opposing counsel on October 22, 2013. Sarah and James filed a response (on the correct form) on October 30, claiming that proper service should have been made either in person on October 22 or by mail on October 16, and that they never stipulated to receive service by facsimile. The hearing on the motion was held on November 13. Sarah and James were present, represented by counsel, and had an opportunity to be heard. There is no procedural error requiring reversal. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105-106.)

34

IV

*THE APPEAL IS NOT FRIVOLOUS*

" '[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—*or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.*' "  (*In re Reno* (2012) 55 Cal.4th 428, 513, quoting *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  "However, any definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal.  Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal.  An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions."  (*In re Marriage of Flaherty,* at p. 650.)

While appellants' counsel would benefit by reviewing the standards of appellate review (see, e.g., *In re Michael G*. (2012) 203 Cal.App.4th 580, 595; *People v. Watson* (1956) 46 Cal.2d 818, 835-838), an appeal is not frivolous if any of the legal points raised are arguable on their merits.  (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 649, citing *Anders v. California* (1967) 386 U.S. 738, 744.)  This appeal raises a substantial question of whether a court exceeds its jurisdiction when it issues a temporary visitation order on dismissal of a section 7822 proceeding.  While the record fully supports the court's finding that the section 7822 petition was frivolous, we cannot conclude that all of the issues raised on appeal completely lacked merit.  We therefore reject Christopher's

35

argument that Sarah and James's appeal is frivolous and deny his request that we impose sanctions on appellants on that basis.

## DISPOSITION

The judgment and orders are affirmed.  Respondent is entitled to costs on appeal. (Rule 8.278(a).)


AARON, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.