Filed 6/2/22  In re K.K. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.K., JR., a Minor. | |
| L.S., | |
| Petitioner and Respondent, | G060733 |
| v. | (Super. Ct. No. 20AD000045) |
| K.K., SR., | O P I N I O N |
| Objector and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Scott B. Cooper, Judge.  Affirmed.

Marsha F. Levine, under appointment by the Court of Appeal, for Objector and Appellant.

Nelson Kirkman and Graham D. Kirkman for Petitioner and Respondent.

\* \* \*

K.K., Sr. (Father) appeals from a judgment terminating his parental rights to his 11-year-old son, K.K., Jr. (K.K.), under Family Code[1] section 7822, which authorizes the termination of rights of a parent who "has left the child in the care and custody of the other parent for a period of one year . . . without communication from the parent . . . with the intent . . . to abandon the child." (§ 7822, subd. (a)(3).) Father concedes he did not communicate with K.K. for over a year, so the sole issue on appeal is whether substantial evidence supports the trial court's finding of intent to abandon. According to Father, he never intended to abandon K.K.; he stopped trying to communicate with K.K. only because K.K.'s mother had consistently thwarted his communication efforts, and he believed further attempts at communication would be futile. After reviewing the entire record, we find substantial evidence supports the finding of intent to abandon and affirm the judgment.

## FACTS

L.S. (Mother) and Father began dating in 2009 in Arizona. Their son, K.K., Jr., was born in September 2010. When K.K. was about one year old, Mother and Father broke up, and they alternated caring for K.K. on a weekly basis until April 2013, when Father moved to Utah for a seasonal job. After Father returned to Arizona in October 2013, K.K. continued to live exclusively with Mother.

In November 2013, Mother and K.K. moved to Texas; Father did not object. The next (and final) time Father saw K.K. in person was in March 2014, when Mother and K.K. visited Arizona. During that visit, Mother got into a physical

---

[1] All statutory references are to the Family Code.

2

altercation with the mother of Father's other children. Mother thereafter prevented Father from contacting K.K.

In late 2014, Father moved to Illinois; he and Mother then resumed their communications about K.K. For the next several years, Mother and Father exchanged text messages and e-mails about K.K. from time to time, and Father occasionally asked to talk with K.K. either by telephone or video. Father also mailed K.K. birthday and Christmas presents, asked to visit K.K. once for a three-day weekend in October 2015 (which Mother declined due to short notice and scheduling conflicts), and offered to provide K.K. health insurance (which Mother was already providing). Despite these occasional efforts, there were extended periods of time during which Father made no attempts to communicate with K.K. The last time Father spoke with K.K. was in late 2016.[2]

Mother married D.S. (Stepfather) in July 2015; Mother, Stepfather, and K.K. moved to California in July 2017. Mother did not inform Father about the move because she felt he and K.K. no longer had a bond. She also refused to give Father their new address in California.

Mother and Father's relationship then further deteriorated. Between November 2017 and September 2018, Father sent Mother several text messages about gifts he had sent to K.K.; Mother did not respond. From September 2018 onward, Father had no communication with Mother. Father suspected that Mother had blocked his number, and he assumed any further communication efforts would be futile based on her refusal to share her new address and her failure to respond to many of his text messages.

---

[2] Mother attempted to set up a call between Father and K.K. in October 2017, but the call did not happen because K.K. was feeling "shy" and anxious about talking with Father.

In March 2020, Mother filed a petition to terminate Father's parental rights under section 7822, and Stepfather filed a request to adopt K.K. After being served, Father texted Mother to say he was glad she filed the petition "so finally we can have communication about [K.K.]. I still want to be a part of [K.K.'s] life and I will always do what it takes to be a part of his life." Mother did not respond. Father objected to Mother's petition, asserting he had no intent to abandon his son and the lack of contact was due to Mother's failure to facilitate communications and visits.

Following a bench trial, the trial court granted Mother's petition and entered a judgment declaring K.K. free from Father's parental custody and control. Father filed this appeal.

**DISCUSSION**

Section 7800 et seq. governs proceedings to have a child declared free from a parent's custody and control. The purpose of such proceedings is to promote the child's best interest "by providing the stability and security of an adoptive home." (§ 7800.) The statutory provisions are "liberally construed to serve and protect the interests and welfare of the child." (§ 7801.)

Section 7822 establishes the grounds for terminating parental rights due to a parent's voluntary abandonment. It allows for the commencement of proceedings where "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).)

As is evident from this statutory language, "a section 7822 proceeding is appropriate where 'three main elements' are met: '(1) the child must have been left with another; (2) without provision for support or without communication from . . . his parent[] for a period of one year; and (3) all of such acts . . . must have been done "with

4

the intent on the part of such parent . . . to abandon [the child].'"'" (*Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1010 (*Allison C.*).)  "The parent need not intend to abandon the child permanently; it is sufficient the parent had the intent to abandon the child during the statutory period." (*In re E.M.* (2014) 228 Cal.App.4th 828, 839.) "Abandonment and intent '"are questions of fact for the trial judge"'" (*Allison C.* at p. 1011), whose findings must "be supported by clear and convincing evidence" (§ 7821).

We apply "a substantial evidence standard of review to a trial court's findings under section 7822.  [Citation.]  Although a trial court must make such findings based on clear and convincing evidence (§ 7821), this standard of proof '"is for the guidance of the trial court only; on review, our function is limited to a determination whether substantial evidence exists to support the conclusions reached by the trial court in utilizing the appropriate standard."'" (*Allison C.*, *supra*, 164 Cal.App.4th at p. 1010, fns. omitted.)  Under this standard, '"'"[a]ll conflicts in the evidence must be resolved in favor of the respondents and all legitimate and reasonable inferences must be indulged in to uphold the judgment."'" (*Id.* at pp. 1010-1011.)  "We do not evaluate 'the credibility of witnesses, resolve conflicts in the evidence or determine the weight of the evidence.'" (*Adoption of A.B.* (2016) 2 Cal.App.5th 912, 922-923 (*A.B.*).)

Father concedes he did not provide support for or communicate with K.K. for at least one year beginning in September 2018.  Accordingly, the only issue on appeal is whether substantial evidence supports the trial court's finding that Father intended to abandon K.K. during the statutory period.

Under section 7822, subdivision (b), a parent's failure to provide support or communicate with his or her child "is presumptive evidence of the intent to abandon," and "token efforts to support or communicate with the child" will not overcome that presumption.  (§ 7822, subd. (b).)

The presumption is rebuttable, however.  Thus, "when a party challenging the existence of section 7822's presumption of an intent to abandon presents evidence of

5

its nonexistence, the presumption disappears and the court must find the requisite intent 'without regard to the presumption' and 'with no change in the allocation in the burden of proof.'" (*In re Aubrey T.* (2020) 48 Cal.App.5th 316, 327.) "[O]nce [a parent has] rebutted the presumption, the juvenile court [may] not rely solely on evidence of [the parent's] failure to support or communicate with [the child] to find that he [or she] intended to abandon [the child]. Instead, there ha[s] to be some other evidence from which the court reasonably could infer that [the parent] acted with the requisite intent." (*Id.* at p. 328.)

In this case, the trial court found Father's failure to communicate with or support K.K. for at least one year before the petition was filed constituted presumptive evidence of Father's intent to abandon, and the burden shifted to Father to produce evidence he did not intend to abandon K.K. The court further found that Father rebutted the presumption of intent, citing Father's testimony that he never intended to abandon K.K., that he stopped reaching out only because it was futile, and that he immediately reached out to Mother after receiving the petition. The burden then shifted back to Mother to prove Father's intent to abandon by clear and convincing evidence.

The trial court found that Mother met that burden. Among other things, the court noted that between 2016 and September 2018, there were large gaps of time where Father made no effort to communicate with Mother or K.K.; Father made no effort to locate them in response to Mother's efforts to thwart contact; and Father never took any other legal action to assert his parental rights. The court also noted that between September 2018 and March 2020, Father made no effort to communicate with his son, he did not try to locate him, and he did nothing to assert his parental rights. In the court's words, Father's "actions, or more precisely, inaction, during that time period evidence an intent to abandon [K.K.]."

Father nonetheless contends Mother failed to prove intent to abandon because it would have been futile for him to make further attempts to communicate with

6

K.K. after September 2018, and because Mother had repeatedly demonstrated her intent not to allow Father to have any relationship with his son. According to Father, the trial court failed to give due consideration to Father's mindset and his reasonable conclusion based on Mother's conduct that further attempts at contact would be futile.

We are not persuaded. "[T]he trial court is not required to believe the natural parent's testimony as to [his] intent. [Citations.] 'Intent to abandon, as in other areas, may be found on the basis of an objective measurement of conduct, as opposed to stated desire.'" (*In re Brittany H.* (1988) 198 Cal.App.3d 533, 550; see *A.B., supra,* 2 Cal.App.5th at p. 923 [trial court may "'consider[] not only the number and frequency of [parent's] efforts to communicate . . . , but [also] the genuineness' of the parent's efforts"].)

An objective assessment of Father's conduct provides substantial evidence supporting the trial court's conclusion that Father intended to abandon his child during the statutory period. The parental role includes the provision of "physical care, nourishment, comfort, affection and stimulation" and involves "companionship and shared experiences." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Father gave K.K. none of those; instead, he abdicated his role as the child's father for years. Before this petition was filed in 2020, Father had not taken care of or lived in the same state as K.K. since 2013; he had not seen K.K. in person since 2014; he had not asked to visit K.K. since 2015; he had not spoken with K.K. since late 2016; he had not attempted to communicate with K.K. through Mother since late 2017; and despite Mother's ongoing efforts to thwart Father's attempts at communication, Father never took any meaningful step toward enforcing his parental rights or trying to locate his son. This goes well beyond a failure to communicate; it is a total relinquishment of his parental responsibilities.

Father argues that "the law does not require the doing of a futile act," and he should not be required to "go through the motions and endure an exercise in futility"

7

to prevent the termination of his parental rights. As Father puts it: "When a mother repeatedly thwarts a father's efforts to see and/or communicate with his child, what more must the father do to protect his parental rights . . . ?"

While this argument does have some appeal here given Mother's conduct, it runs contrary to the legislative purpose of section 7800 et seq., which is to promote the child's best interest "by providing the stability and security of an adoptive home." (§ 7800; see *A.B.*, *supra,* 2 Cal.App.5th at p. 923 [child's need for stability cannot be postponed indefinitely to conform to absent parent's plans to reestablish contact in the future].) If we were to sustain Father's argument, the natural follow-up question would be: if not now, when? "[T]he law does not require that [the child's] life be kept in limbo . . . . '"The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it."'" (*Id.* at pp. 923-924.)

The court in *In re Daniel M.* (1993) 16 Cal.App.4th 878, rejected a similar argument made by a father who had no contact with his son for more than two years. The father asserted he was excused from contacting his son because any such effort would have been "futile" due to interference by the boy's mother. (*Id.* at p. 880.) In affirming the judgment, the appellate court reasoned that "a child's need for a permanent and stable home cannot be postponed for an indefinite period merely because the absent parent may envision renewing contact with the child sometime in the distant future." (*Id.* at p. 884.) The same is true here: even if Mother thwarted Father's attempts to communicate with K.K. (and this opinion should in no way be construed to condone her conduct), we cannot ignore Father's own failures.

Substantial evidence supports the trial court's finding that Father intended to abandon K.K. for at least one year under section 7822.

## DISPOSITION

The judgment is affirmed.


GOETHALS, J.

WE CONCUR:


MOORE, ACTING P. J.


MARKS, J.*


   * Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.