Filed 4/29/15  In re D.R. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re D.R. et al., Persons Coming Under the Juvenile Court Law. | B257862 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK05101) |
| Plaintiff and Respondent, | |
| v. | |
| DANNY R., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Veronica McBeth, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

Danny R. (father) challenges a dependency court order asserting jurisdiction over his children, Dav. R., Diego R., and DaS. R. Father contends substantial evidence did not support the court's jurisdictional findings based on his conduct. We affirm the jurisdictional and dispositional orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father divorced in 2010. Mother had full custody of Dav. and twins Diego and DaS.[1] In May 2014, a child support hearing was held in a family law court at father's request. The court concluded that since Dav. had been living with the paternal grandmother, for purposes of child support, father would be acknowledged as having 80 percent physical custody of Dav., and 10 percent custody of the twins. Father was also permitted to remove Dav. from the paternal grandmother's home. The court ordered mother to pay father $13 per month in child support. According to mother, although she tried to present evidence that she had been financially supporting Dav., "the judge did not want to hear anything she had to say." Mother asserted she did not want father to have custody of Dav. because father was violent. The same day of the family law proceeding, mother went to police in Glendora to report father's physical abuse of Dav. in December 2013.

Dav. told police and the Los Angeles County Department of Children and Family Services (DCFS) that on December 25, 2013, father became angry because the twins were "horsing around." Father slapped DaS. on the face numerous times, continuing even after DaS. fell to the floor. Dav. (the older teenage sister), got in between DaS. and father. She then ran into another room because she knew father would "come after her." Father followed her, pulled her hair, slapped her several times, and punched her twice with a closed fist. She fell to the ground. After father told her to get up, he again slapped her and pulled her hair. Father's fiancée tried to intervene. Father hit Dav. on the leg with a broom. As a result of father's beating, Dav. sustained a black eye. She took

---

[1] When the dependency proceedings at issue here were initiated, Dav. was 15 years old. The twins were 13 years old.

2

pictures of herself and sent them to mother. At that point, she moved to the paternal grandmother's home. The twins recounted similar details of the incident.

The three children reported father often hit them with a belt, a broom, or his fist, and he slapped them. Father angered easily and, "if you piss him off he would strike you with whatever he could get in his hands." Mother and the children recalled that once, when the children's now-adult sibling was a child, father banged his head against a sink, causing the child to have "bloody eyes." They indicated father was more angry and loud after he had been drinking. Dav. said father drank often. Mother also said father had an issue with alcohol and was more aggressive and violent after drinking. The children reported father called them names. He told Dav. she was fat, ugly, and stupid, and that he wanted her to "rot in the trash." The twins said father called them "faggots, [g]ay, weak, and stupid."[2] All three children indicated they no longer wished to see father.

Mother told DCFS she had not reported the December 2013 incident earlier because father's family told her they would "handle it," and reporting it would ruin father's life. Mother also described her fear of father. She recalled that father had threatened to kill her in the past. He had put a gun to her head and in her mouth. Mother told police father abused her during their marriage. He had abused previous partners and was convicted of domestic violence. DCFS reported father had convictions in 1990 and 1999 for misdemeanor infliction of corporal injury on a spouse or cohabitant. Dav. confirmed that she had seen father hit, push, slap, and choke mother. Dav. had also seen father drag his fiancée to a pool and hold her head under the water.

Father and his fiancée denied father physically abused the children.[3] He denied having a drinking problem. Father claimed the allegations were only a result of mother

---

**2**    According to DCFS, when asked about this allegation, father responded: "Now I cuss at my children I mean who knows what someone says when they are angry and fighting. My daughter has a tongue on her just like her mom; you should hear some of the things that come out of her mouth. I tell my boys that they should not act like faggots because they are young men and should behave like a young man."

**3**    The fiancée also denied father had ever physically abused her.

seeking to turn the children against him as she was unable to move on with her life and wanted to "see [him] go down." He questioned why, if the December 2013 allegations were true, mother failed to report him to the police right away and instead made the report only after he went to court to modify the child support order.

Although several of father's relatives denied ever seeing father abuse the children, one paternal relative who wished to remain anonymous "due to fear of retaliation," had a different story. The relative informed DCFS: "I have witnessed with my own two eyes [father] slapping the children in the face with his hands. His favorite thing to do is slap them in the face. Dav. called me and told me that she received a black eye from her father . . . . The family keeps ignoring what's going on thinking he is going to stop but he won't, he is a very violent man especially when he is drunk." The same relative also recounted that father had dragged his ex-wife with a car for a "couple of miles," badly damaging her face. The relative recalled father slapped a former girlfriend and called her names. Father took another woman to Las Vegas, slapped her, and hit her such that she was "bruised for days." The relative said father called Dav. "fat, a fucking trashy girl," and other demeaning names, and called the twins "[f]aggots and all sorts of degrading names." The relative concluded: "For the children's wellbeing if something is not done they will get hurt in their father's care and I fear possible death because no one can control him when he gets to that point. Even though other family members won't tell you these things most of us are fearful of him and choose to remain silent."

At the jurisdiction hearing, father argued the petition's allegations concerning him should be dismissed. He contended mother had coached the children to make untrue statements, as evidenced by the failure to report the alleged December 2013 incident until after mother received an unfavorable ruling from the family law court. He further argued allegations that he had physically abused mother were many years old and there was no evidence he and the fiancée had any violent altercations.

4

The juvenile court sustained an amended dependency petition with findings that in December 2013, father physically abused Dav., mother failed to protect her, and the parents' conduct placed all of the children at risk of physical harm. The sustained petition also included allegations that father had physically abused the children by striking them with "fists, hands, belts, shoes, and brooms," and mother knew of the abuse but failed to protect the children. The court additionally sustained jurisdictional allegations regarding father's abuse of the children's adult sibling, father's domestic violence with mother and other women in the past, and his abuse of alcohol. Mother pled no contest to the amended petition.

Between the jurisdiction and disposition hearings, DCFS was unable to contact father, despite repeated attempts. Father's fiancée informed a social worker that father "was aware that the department was attempting to get a hold of him and expressed that he was done with his children and that he wanted nothing to do with the children and the department." The children told DCFS they did not want to have any contact with father.

At the disposition hearing, the court awarded mother full legal and physical custody and terminated dependency jurisdiction. The court ordered father to participate in domestic violence counseling, anger management and parenting programs, and conjoint therapy with the children. Father's visits were to be monitored, at least twice a month, "as long as the children agree." Father timely appealed.

## DISCUSSION

### Substantial Evidence Supported the Juvenile Court Jurisdictional Order

Father argues only that the evidence was insufficient to support the juvenile court's jurisdictional findings. We disagree.

*A. Although Father Does Not Challenge the Jurisdictional Findings as to Mother, We Consider the Appeal*

As an initial matter, we address the Department's argument that we need not consider this appeal because father does not contest the jurisdictional findings as to mother.

5

It is well established that the juvenile court may declare a minor a dependent if either parent's actions provide a basis for jurisdiction. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762 (*Drake M.*); *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492 (*I.A.*); *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431 (*J.K.*); *In re Joshua G.* (2005) 129 Cal.App.4th 189, 202.) If the appealing parent does not challenge the juvenile court's findings based on the other parent's conduct, the appeal may raise only academic questions of law since the appellate court "cannot render any relief . . . that would have a practical, tangible impact on [the appealing parent's] position in the dependency proceeding." (*I.A., supra*, 201 Cal.App.4th at p. 1492.) Yet, the reviewing court may "decide on a case-by-case basis whether subsequent events in a juvenile dependency matter make a case moot and whether our decision would affect the outcome in a subsequent proceeding. [Citations.]" (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404.)

Several courts have considered one parent's appeal of jurisdictional findings based on that parent's conduct alone, despite the lack of a challenge to findings based on the other parent's conduct. Courts have done so when the jurisdictional allegations rendering the appealing parent "offending" may have a significant effect on subsequent dependency proceedings, that parent's ability to have custody or visitation, or, when dependency jurisdiction has already been terminated, the parent may continue to be affected by exit orders or custody orders in a family law court. (See e.g., *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219, fn. 7; *Drake M., supra*, 211 Cal.App.4th at p. 763; *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; *J.K., supra*, 174 Cal.App.4th at p. 1432.)

Here, the dependency court orders flowing from the jurisdictional findings as to father led to the loss of father's 80 percent custody of Dav. The dependency court awarded mother sole legal and physical custody, and allowed father only monitored visits. It appears from the record that before the dependency proceedings, father at a minimum had unmonitored overnight visits with the twins. Further, at the disposition hearing, the court ordered father to engage in several rehabilitative programs despite the termination of jurisdiction. Father was only to have visits with the children if they were

willing to do so.[4]  We thus find it appropriate to consider father's appeal challenging the jurisdictional order to the extent it was based on his conduct.

### B.  *Substantial Evidence Supported the Jurisdictional Order*

"We affirm a juvenile court's jurisdictional and dispositional findings if they are supported by substantial evidence.  [Citation.]  'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'  [Citation.]"  (*In re A.J.* (2011) 197 Cal.App.4th 1095, 1103 (*A.J.*).)

Under Welfare and Institutions Code, section 300, subdivision (a), a child is within the jurisdiction of the juvenile court if, "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian.  For the purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian which indicate the child is at risk of serious physical harm."

Ample evidence supported the finding that the children were persons described by section 300, subdivision (a), due to father's physical abuse.  All three children described how father routinely hit them with his hands, shoes, belts, and brooms.  They also described the December 2013 incident in which father repeatedly slapped DaS., then slapped Dav., punched her, and hit her with a broom after she intervened to protect DaS.  The severity of the incident was not diminished by the fact that several months had passed.

---

[4]     Father does not separately challenge the dispositional orders on appeal except to contend that the reversal of the jurisdictional order would render the dispositional orders moot.

7

The children not only described an ongoing pattern of physical abuse against them, they also recounted a severe incident involving their now-adult sibling. Further, mother, Dav., and a paternal relative recounted father's violence against other people close to him, including mother, father's current fiancée, father's other ex-spouse, and a previous girlfriend. The juvenile court had a strong evidentiary basis to conclude father's violent behavior in December 2013 was not an isolated incident. There was significant evidence of a substantial risk the children would suffer serious physical harm inflicted nonaccidentally upon them by father. There was further evidence that Dav. had already suffered such harm, and that there was a substantial risk father would similarly abuse the twins.

On appeal, father focuses his challenge on purported inconsistencies in the children's descriptions of the December 2013 incident. However, the gist of the children's accounts was the same. To the extent each child recounted the incident differently to DCFS, those differences were for the juvenile court to assess when considering credibility and the weight of the evidence. We do not reweigh the evidence on appeal or second-guess the juvenile court's credibility determinations. (*In re E.M.* (2014) 228 Cal.App.4th 828, 851.) Further, although DCFS and the juvenile court acknowledged the seemingly opportunistic timing of mother's decision to report the December 2013 incident to the police, the court ultimately concluded the allegations in the amended petition were true. On appeal, we resolve all conflicts in the evidence in favor of the juvenile court orders. (*In re I.R.* (2014) 226 Cal.App.4th 201, 211.)

Our consideration of the juvenile court findings under section 300, subdivision (a) indicates substantial evidence supported the court's jurisdictional order based on father's conduct. Only one jurisdictional finding is required for the juvenile court to assert dependency jurisdiction over a child. (See *In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"].) Although we considered it appropriate to determine whether substantial evidence supported any jurisdictional findings based on father's conduct, we do not find it necessary to consider all of the possible factual bases for the

jurisdictional order. We need not consider father's additional arguments that the evidence was insufficient to sustain the allegations regarding domestic violence and father's alcohol abuse.

## DISPOSITION

The juvenile court jurisdictional and dispositional orders are affirmed.


BIGELOW, P.J.

We concur:


RUBIN, J.


FLIER, J.