Filed 3/23/20 Modified and Certified for Publication 4/24/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re AUBREY T., a Person Coming Under the Juvenile Court Law. | B296810 |
| | (Los Angeles County |
| TAYLOR T. et al., Respondents, v. ANTHONY N., Appellant. | Super. Ct. No. 17CCAB00018) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Margaret Henry, Judge.  Reversed.

Pamela Rae Tripp for Appellant Anthony N.

Law Offices of Vincent W. Davis, Vincent W. Davis, and Stephanie M. Davis for Respondents Shirley T. and Ernest T.

Taylor T., in pro. per., for Respondent Taylor T.

———————————

Anthony N., the biological father of minor Aubrey T., appeals from the juvenile court's judgment granting a petition to terminate Anthony's paternal rights and declare Aubrey free for adoption by her maternal great-grandparents. On appeal, Anthony argues the evidence was insufficient to support the juvenile court's finding that he abandoned Aubrey within the meaning of Family Code section 7822. Anthony also asserts the juvenile court acted in excess of its jurisdiction by adjudicating the petition under Family Code section 7822 when the petition originally was filed under a different statutory provision. For the reasons set forth below, we reverse.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Care and Custody of Aubrey

Anthony and Taylor T. are the biological parents of Aubrey, a girl born in July 2011. Prior to Aubrey's birth, Anthony and Taylor had been in an on-again-off-again relationship for about four years. When Taylor was four months pregnant with Aubrey, she and Anthony began living together in Riverside; however, Taylor moved out shortly before the birth due to problems in their relationship. At the time of the birth, Taylor was staying with Aubrey's maternal great-grandparents, Shirley and Ernest T., in Long Beach while Anthony continued to live in Riverside. Anthony was present at Aubrey's birth, but he was not named as the child's father on the birth certificate.

When Aubrey was a few weeks old, Taylor and the baby moved in with Anthony at his home in Riverside. In February

2

2012, when Aubrey was six months old, Taylor and Anthony got married. Over the next two and a half years, Taylor and Aubrey continued living with Anthony, although there were periods of time when Taylor took Aubrey with her to stay with Shirley and Ernest because she and Anthony were having marital problems. During the time that Taylor and Aubrey resided with Anthony, he generally provided them with financial support and helped Taylor with the day-to-day tasks of caring for their daughter. According to Taylor, however, Anthony was often absent from the home because he had a serious alcohol and drug abuse problem. There were also occasions when Anthony committed acts of domestic violence against Taylor.

In November 2014, when Aubrey was three years old, Anthony and Taylor separated. Around that time, Taylor and Aubrey moved in with Shirley and Ernest. Taylor also obtained a temporary restraining order (TRO) against Anthony that precluded him from having any contact with her or Aubrey. By early 2015, the TRO had been lifted, and Taylor and Anthony began communicating again via text and email. Taylor also allowed Anthony to have some visits with Aubrey outside the maternal great-grandparents' home. Once Aubrey began living with Shirley and Ernest in late 2014, Anthony did not have any direct communication with them. Instead, all of Anthony's contact with Aubrey was facilitated by Taylor.

For a three-month period in 2015, Taylor's whereabouts were unknown. In November 2015, after learning from a mutual friend that Taylor was missing, Anthony went to the maternal great-grandparents' home accompanied by a police officer. While Anthony indicated that his intent in going to the home was to visit Aubrey, Shirley and Ernest feared that Anthony was there

3

to take custody of the child.  Shirley told the officer that Anthony was not named as Aubrey's father on her birth certificate and that he would need to get a paternity test to prove he was her father.  Anthony left the home that day without seeing Aubrey.

## II.    Anthony Seeks Custody of Aubrey In Family Court

On December 15, 2015, Anthony filed a petition for dissolution of the marriage in which he sought custody of Aubrey. After filing the petition, Anthony and his attorney met with Taylor to discuss issues of child custody and support.  According to Anthony, he and Taylor agreed to a 50/50 custody arrangement for Aubrey at that meeting.  Taylor, however, denied that any such agreement was reached.  On December 26, 2015, Anthony's attorney sent Taylor a proposed stipulated judgment regarding the terms of the parties' purported agreement, but did not receive any response.

During this time period, Taylor and Anthony continued to exchange text messages in which he repeatedly asked about Aubrey and when he could spend time with her.  He also warned Taylor that he would be going to court if she did not sign the paperwork from his attorney.  In early 2016, Taylor told Anthony in a series of text messages that Shirley and Ernest had "flipped out and threatened" her when they learned Aubrey was communicating with him.  They also had expressed to Taylor that, if she was on Anthony's side, they would "cut [her] out of the equation and do everything" they could to keep him away.  In response, Anthony assured Taylor that her family would not be able to say anything once they "were done with [the] paperwork." In January 2016, Taylor and Anthony briefly resumed their sexual relationship.  However, when Taylor discovered that

4

Anthony was seeing another woman at the same time, their relationship rapidly deteriorated. Shortly after this discovery, Taylor ceased all communication with Anthony and refused to respond to any of his text messages about Aubrey. On June 7, 2016, Anthony filed a request to enter a default judgment in the marital dissolution action. After receiving notice of the request, Taylor retained an attorney to represent her in the case. The parties then filed a stipulation to set aside the request for a default. On August 31, 2016, Taylor filed a response to the petition in which she requested sole legal and physical custody of Aubrey with supervised visitation for Anthony. The parties were ordered to attend a mediation on September 2, 2016 to address child custody and visitation, but Taylor did not appear.

On September 7, 2016, Anthony filed a request for an order to establish his paternity and for joint legal and physical custody of Aubrey. Taylor opposed the request. In a declaration signed on October 3, 2016, Taylor stated that Anthony had not provided any financial support for Aubrey or made any serious attempts to visit the child for the past two years.

## III. The Maternal Great-Grandparents Seek Guardianship of Aubrey In Probate Court

On July 18, 2016, while the marital dissolution action was pending in family court, Shirley and Ernest filed a petition to be appointed the guardians of Aubrey in probate court. The petition alleged that Anthony had a history of domestic violence and drug and alcohol abuse, and that he had threatened to harm both Taylor and Aubrey if Taylor took any legal action against him. It also alleged that Aubrey used to spend weeks under the maternal great-grandparents' care while Anthony and Taylor were dealing

5

with marital issues, and that Aubrey had been in their custody on a full-time basis since about October 2014. The petition was accompanied by a written consent to the proposed guardianship signed by Taylor. On September 14, 2006, Shirley and Ernest also filed an ex parte application for temporary guardianship of Aubrey on the ground that Anthony had not made any attempt to visit the child or to financially support her for the past two years.

Anthony objected to the petition and ex parte application, and requested that the action be transferred to the family court to decide all issues related to the custody of Aubrey. On September 14, 2016, the probate court denied the ex parte application and ordered the matter suspended pending the family law proceeding.

## IV. The Parties Return To Family Court For Adjudication Of Custody And Visitation

On October 6, 2016, Shirley and Ernest filed a motion to join the family law proceeding. They also filed a request for an order declaring them to be Aubrey's de facto parents, and Ernest to be the child's presumed father. In addition, Shirley and Ernest asked the family court to grant them sole legal and physical custody of Aubrey.

On February 7, 2017, the family court held a hearing on Anthony's request for an order for joint legal and physical custody. At the hearing, the court ordered the parties to meet and confer about a possible step-up proposal for custody and visitation. Although Anthony's counsel repeatedly attempted to schedule the meet-and-confer conference, Taylor's counsel failed to timely respond. On February 28, 2017, paternity test results confirmed that Anthony was Aubrey's biological father. On

April 21, 2017, Anthony filed an ex parte application seeking temporary physical custody of Aubrey pending resolution of a step-up schedule.  Anthony also requested the appointment of minor's counsel for Aubrey given the highly contested nature of the custody and visitation issues.

## V.  Taylor Files A Petition To Terminate Anthony's Parental Rights In Juvenile Court

On April 21, 2017, the same day that Anthony filed his ex parte request for temporary custody of Aubrey in family court, Taylor filed a petition to determine Anthony's parental rights pursuant to Family Code[1] section 7662 in juvenile court.  Among other allegations, the petition asserted that Taylor and Anthony did not attempt to marry each other before or after Aubrey's birth; that Anthony did not openly hold out Aubrey as his child and receive her into his home; and that Anthony failed to provide any child support for Aubrey and to communicate with her.  The petition sought to terminate Anthony's parental rights so that Aubrey could be free for adoption by Shirley and Ernest.  Taylor also concurrently filed a motion to stay the family law proceeding pending adjudication of the petition.

At a hearing held on April 21, 2017, the family court denied Anthony's ex parte application on the ground that the pending requests for custody and visitation had to be stayed until the juvenile court ruled on the petition to terminate parental rights.  Anthony's counsel expressed concern that Taylor and the maternal great-grandparents were engaging in delay tactics to

---

[1]    Unless otherwise stated, all further statutory references are to the Family Code.

7

prevent Anthony from having any contact with his child.  In response, the family court stated:  "I'm not going to make a judgment today, obviously, about whether Respondent has engaged in gamesmanship, but I will say this, as a general principle, if the court ultimately finds that Respondent has engaged in gamesmanship in the litigation process, that will be a very important factor in determining how we go forward, if and when this court ever regains jurisdiction.  The optics are bad . . . for Respondent, that there's been so many attempts here to go to different courts, to basically prohibit Petitioner from having any relationship with the child. . . . To terminate somebody's parental rights is not an easy thing to do.  It's a steep hill to climb. . . .  So Respondent has to think very carefully about this."

## VI.    The Juvenile Court Conducts A Contested Hearing On The Petition To Terminate Parental Rights

Starting in October 2018, the juvenile court held a seven-day hearing on Taylor's petition to terminate Anthony's parental rights and free Aubrey for adoption by Shirley and Ernest.

Taylor, Shirley, and Taylor's stepfather, David F., testified on Taylor's behalf.  They generally recounted that Anthony had a history of alcohol and drug abuse during his relationship with Taylor and following their separation.  Taylor stated that, during the time that Aubrey lived with them, Anthony drank alcohol on a daily basis and was often intoxicated at night and on the weekends.  Anthony also used cocaine, had introduced Taylor to the drug, and had been a dealer of both cocaine and ecstasy.  Although Taylor repeatedly tried to convince Anthony to enter a drug rehabilitation program, he refused.  In addition, Taylor

8

described a series of incidents between 2009 and 2013 where Anthony was physically abusive toward her.

Shirley testified that Aubrey had been living with her and Ernest since October 2014 and was thriving in their care. They financially supported her, were actively involved in her education and extracurricular activities, and were able to meet all of her day-to-day needs. Shirley also testified that, after Aubrey began residing with them, the only time Anthony attempted to have contact with the child was in November 2015 when he came to their home with a police officer. Anthony did not otherwise reach out to the maternal great-grandparents about Aubrey or ask if he could see her. Anthony also did not provide any financial support for Aubrey at any time from October 2014 to May 2018. Taylor acknowledged that she received text messages from Anthony in which he asked to visit Aubrey, but she described those messages as sporadic in nature. Taylor also testified that there were times when she allowed Anthony to have visits with Aubrey. On other occasions, however, Taylor refused to let Anthony see their daughter because he was intoxicated or had missed a prior scheduled visit.

Anthony testified on his own behalf. He admitted that he had a history of drug and alcohol abuse, and had prior arrests for drug-related offenses. He maintained, however, that he had been sober since September 2013 and had completed a court-ordered 18-month drug and alcohol program in March 2016. Anthony denied that he ever sold drugs. He also denied that he had engaged in any acts of domestic violence against Taylor. Anthony testified that he was gainfully employed, and was living in Long Beach with his girlfriend and her school-age daughter.

Anthony further testified that, after the TRO was lifted in January 2015, he attempted to visit Aubrey. Anthony regularly sent Taylor email and text messages about seeing Aubrey, but Taylor was not always responsive to these requests. Taylor did, however, allow Anthony to have visits with Aubrey on about 10 occasions in 2015. The situation changed, however, in January 2016 when Taylor learned of Anthony's involvement with another woman and stopped communicating with him altogether. At that point, Anthony decided to pursue custody and visitation solely through the court system. Anthony stated that he did not contact Shirley and Ernest about visiting Aubrey because he believed that he and Taylor should communicate directly about their child. Taylor also had told Anthony that Shirley and Ernest did not approve of him having any relationship with her or Aubrey.

Two experts also testified at the hearing. Dr. Nancy Kaser-Boyd prepared a child custody evaluation report pursuant to Evidence Code section 730. She testified that she found Taylor's description of Anthony's prior drug and alcohol use and domestic violence to be credible. She further opined that Aubrey was safe and happy in the care of Shirley and Ernest, and that adoption would provide the child with continued stability and security. Dr. Kaser-Boyd recommended that any visitation with Anthony or Taylor be monitored. She also recommended drug and alcohol testing for Anthony and individual therapy for Taylor. Dr. Alfredo Crespo was retained by Anthony to conduct an independent psychological evaluation. Dr. Crespo opined that Anthony was available to be a valuable social capital resource to Aubrey. Dr. Crespo based his opinion on the fact that Anthony had been sober for a number of years, was steadily employed, was

in a healthy relationship with his current girlfriend, and had emotional and financial support from his family.

## VII. The Juvenile Court Terminates Anthony's Parental Rights Over Aubrey Based On Abandonment

On December 17, 2018, the juvenile court issued a statement of decision and judgment granting the petition to terminate Anthony's paternal rights over Aubrey and declaring her free from the custody and control of her parents. The court based its decision to terminate parental rights on its conclusion that it had been proven by clear and convincing evidence that Anthony had abandoned Aubrey within the meaning of section 7822. With respect to Anthony's credibility, the court found that Anthony repeatedly had lied in his testimony, including when he stated that he had been sober since 2013 and denied that he had committed domestic violence against Taylor. The court also explained that it could not rely on the testimony of Anthony's expert, Dr. Crespo, because his opinions were based on his interview with Anthony, and the court found that Anthony had "lied in that interview just as he did in court."

With respect to Anthony's abandonment of Aubrey, the court focused its decision on the period of time between November 2014 and November 2015. The court noted that Anthony knew that Aubrey was living with Shirley and Ernest following his separation from Taylor, but made no attempt to contact them to arrange a visit with Aubrey or to offer them any financial support. The court also noted that the only contact that Anthony had with Aubrey during this period was when Taylor arranged it for him, and that Taylor credibly testified that Anthony had about five visits with Aubrey for a few hours at a

11

time.  The court found that these 2015 visits with Aubrey were token communications that were insufficient to overcome the presumption of an intent to abandon the child.   The court also concluded that the termination of Anthony's parental rights and adoption of Aubrey by her maternal great-grandparents were in the child's best interest.  The court noted that Shirley and Ernest were the people that Aubrey recognized as her parents, whereas Aubrey had not seen Anthony at all in the past three years and had little recollection of him.

## DISCUSSION

On appeal, Anthony challenges the juvenile court's judgment granting the petition to terminate his parental rights over Aubrey.  Anthony asserts that there was no substantial evidence to support the court's finding that he abandoned Aubrey within the meaning of section 7822.  He also argues that the court acted in excess of its jurisdiction in adjudicating the petition under section 7822, which allows for the termination of parental rights based on abandonment, even though the petition was filed under section 7662, which governs the termination of parental rights of non-presumed fathers in a proposed adoption.

## I.    Governing Legal Principles

The Uniform Parentage Act (UPA) (§ 7600 et seq.) "creates three classes of parents:  mothers, fathers who are presumed fathers, and fathers who are not presumed fathers." (*Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1051.)  "If a man is a presumed father, a third party generally cannot adopt his child unless both he and the mother consent.  (§ 8604-8606.)  If a man is not a presumed father, however, the situation is quite

12

different.  The mother's consent is still required in most cases [citation], but the father's consent is not required unless he successfully petitions to block the adoption and establish his legal status as the child's father.  (§ 7630, 7662.)  Even if he files such a petition, the adoption will proceed over his objection if either the mother or the party seeking to adopt the child successfully petitions for termination of his parental status.  (§ 7662.)  If the court finds in such a proceeding that . . . that it is in the best interest of the child to be adopted by the prospective adoptive parents, it must enter an order stating that the father's consent is not required.  [Citation.]  This order also 'terminates all [the father's] parental rights and responsibilities with respect to the child.'  [Citation.]"  (*Adoption of Michael H.*, *supra*, at p. 1051; see also *Adoption of Alexander M.* (2001) 94 Cal.App.4th 430, 438.)

Section 7822 provides a separate and distinct mechanism for terminating parental rights based on a parent's voluntary abandonment of a child.  It provides that abandonment occurs if "[t]he child has been left by both parents . . . in the care and custody of another person for a period of six months," or by one parent "in the care and custody of the other parent for a period of one year, without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child."  (§ 7822, subd. (a).)  "The failure to provide identification, failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon.  If the parent [has] made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent. . . ."  (§ 7822, subd. (b).)  Once the requisite finding of abandonment has been made, the court may enter an order declaring the child free from the parent's

13

custody and control, which terminates all parental rights and responsibilities with respect to the child. (§§ 7802, 7803, 7820.)

Accordingly, a section 7822 proceeding to terminate parental rights is appropriate "where three main elements are met: (1) the child must have been left with another; (2) without provision for support or without communication from the parent for the statutory period; and (3) with the intent on the part of the parent to abandon the child." (*In re E.M.* (2014) 228 Cal.App.4th 828, 838-839; see also *In re H.D.* (2019) 35 Cal.App.5th 42, 50.) A trial court's finding of abandonment must "be supported by clear and convincing evidence." (§ 7821.) On appeal, the reviewing court examines the entire record to determine whether there is substantial evidence to support the trial court's findings. (*Adoption of A.B.* (2016) 2 Cal.App.5th 912, 922; *Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1010.)[2]

## II. The Evidence Was Insufficient To Support The Juvenile Court's Finding Of Abandonment

In granting the petition to terminate Anthony's parental rights over Aubrey, the juvenile court found that there was clear

---

[2] The California Supreme Court has granted review in *Conservatorship of O.B.* (May 1, 2019, S254938), limited to the following question: "On appellate review in a conservatorship proceeding of a trial court order that must be based on clear and convincing evidence, is the reviewing court simply required to find substantial evidence to support the trial court's order or must it find substantial evidence from which the trial court could have made the necessary findings based on clear and convincing evidence?" We conclude that, under either standard of review, the evidence in this case was insufficient.

and convincing evidence that Anthony abandoned Aubrey within the meaning of section 7822. The court specifically found that, between November 2014 and November 2015, Anthony left Aubrey in the care of her maternal great-grandparents without any provision for support or any communication. The court also found that Anthony's failure to provide support or communication was presumptive evidence of his intent to abandon his child, and that Anthony's minimal visitation with Aubrey was insufficient to overcome that presumption. Based on our review of the record, however, we conclude the juvenile court's finding that Anthony abandoned Aubrey was not supported by substantial evidence.

The presumption provided by section 7822 affects the burden of producing evidence, not the burden of proof. (*In re Rose G.* (1976) 57 Cal.App.3d 406, 419-420 [interpreting same language in section 7822's predecessor statute].) "The effect of such a presumption is that when the party against whom such a presumption operates produces some quantum of evidence casting doubt on the truth of the presumed fact, the other party is no longer aided by the presumption. The presumption disappears, leaving it to the party in whose favor it initially worked to prove the fact in question.' [Citation.]" (*St. John of God Retirement & Care Center v. State Dept. of Health Care Services* (2016) 2 Cal.App.5th 638, 657; see also Evid. Code, § 604.) Accordingly, when a party challenging the existence of section 7822's presumption of an intent to abandon presents evidence of its non-existence, the presumption disappears and the court must find the requisite intent "without regard to the presumption" and "with no change in the allocation in the burden of proof." (*In re Rose G.*, *supra*, at p. 424.)

An intent to abandon is "a separate required element under section 7822." (*In re Amy A.* (2005) 132 Cal.App.4th 63, 71.) "While a parent need not intend to abandon their child permanently for the court to employ the "'drastic remedy'" of terminating their parental rights under section 7822 . . ., they must intend to abandon their child for [the relevant statutory period]. [Citations.]" (*In re H.D.*, *supra*, 35 Cal.App.5th at p. 52.) ""'[The] question whether [an] intent to abandon exists and whether it has existed for the statutory period is a question of fact for the trial court, to be determined upon all the facts and circumstances of the case.'" [Citation.]" (*In re E.M.*, *supra*, 228 Cal.App.4th at p. 839.) In making this determination, the court "must objectively measure the parent's conduct, 'consider[ing] not only the number and frequency of his or her efforts to communicate with the child, but the genuineness of' the parent's efforts." (*Adoption of A.B.*, *supra*, 2 Cal.App.5th at p. 923.)

In this case, the record reflects that Aubrey began residing with her maternal great-grandparents on a full-time basis in or about November 2014. At that time, Anthony and Taylor separated due to marital problems, and Taylor took Aubrey with her to the home of Shirley and Ernest. Taylor also obtained a temporary restraining order against Anthony that precluded him from having any contact with her or Aubrey, which remained in effect until January 2015. The first time that Anthony sought a court order for custody or visitation was in December 2015 when he filed a petition for dissolution of the marriage. It is undisputed that, between November 2014 and November 2015, Anthony was aware that Aubrey was residing in the home of Shirley and Ernest. It is also undisputed that, during this one-year period, Anthony did not provide Aubrey with any financial

support, thus constituting presumptive evidence of an intent to abandon her under section 7822. The question is whether there was substantial evidence to support the juvenile's court's finding that Anthony failed to overcome that presumption.

At the contested hearing on Taylor's petition to terminate his parental rights, Anthony testified that, once the restraining order was lifted in January 2015, he began communicating with Taylor on a regular basis about visiting Aubrey. Anthony further testified that, between January and June 2015, he and Aubrey had approximately 10 in-person visits with Taylor's consent. To corroborate his testimony, Anthony presented photographs from this time period, which showed him spending time with Aubrey. He also provided email and text messages that he exchanged with Taylor in which he asked about having additional visits. In mid-2015, Taylor ceased communicating with Anthony for a period of time, and her whereabouts were unknown. Anthony testified that, when he learned in November 2015 that Taylor was missing, he went to the home of Shirley and Ernest to check on Aubrey, but they refused to let him see her.

Anthony thus presented evidence that he did not intend to abandon Aubrey in 2015. By producing such evidence, Anthony rebutted section 7822's presumption, which in turn required the juvenile court to find that he had an intent to abandon without regard to the presumption and without reallocating the burden of proof. In terminating Anthony's parental rights, however, the court continued to rely on the presumption, finding that Anthony's visits with Aubrey in 2015 were not sufficient "to overcome the presumption of intent to abandon." Because the presumption disappeared when Anthony met his burden of production, the court erred in making

17

this finding.  Furthermore, while the failure to support or communicate with a child is presumptive evidence of an intent to abandon, that evidence, standing alone, is insufficient to prove intent once the presumption no longer applies.  Therefore, once Anthony rebutted the presumption, the juvenile court could not rely solely on evidence of Anthony's failure to support or communicate with Aubrey to find that he intended to abandon her.  Instead, there had to be some other evidence from which the court reasonably could infer that Anthony acted with the requisite intent.  The record does not contain such evidence.

In finding that Anthony intended to abandon Aubrey within the meaning of section 7822, the juvenile court noted that he "never attempted to visit by contacting Shirley and Ernest." Anthony testified, however, that he "did not feel comfortable in reaching out to them directly," and that he believed he should communicate with Taylor about visitation because they "are the parents of Aubrey."  Anthony also testified that Taylor had told him that Shirley and Ernest did not approve of Anthony having a relationship with Aubrey, and that she feared they "would cut her off" if she allowed him to visit.  This testimony was consistent with Taylor's text messages to Anthony in which she conveyed that her grandparents were threatening to "cut [her] out of the equation and do everything" they could to keep Anthony away after they discovered that Taylor was talking to him.  In her testimony, Shirley admitted that she felt Aubrey should not have any contact with Anthony, and that Taylor "should just cut him out one hundred percent."  Shirley also acknowledged that she had expressed this opinion to Taylor at a time when Taylor was residing in her home and relying on Shirley and Ernest for financial support.  On this record, Anthony's failure to reach out

18

to Shirley and Ernest directly about visiting Aubrey did not demonstrate an intent to abandon the child.

While it is undisputed that Anthony directly communicated with Taylor about Aubrey and that she allowed him to have some visitation with the child, the juvenile court found that these visits were mere "token communications" that did not overcome the presumption of an intent to abandon. In making this finding, the court rejected Anthony's testimony that he had 10 visits with Aubrey between January and June 2015. The court instead credited Taylor's testimony that it was "a little bit less" than the number claimed by Anthony, and that there were "maybe five" visits for a "couple of hours" at a time. For purposes of rebutting section 7822's presumption, Anthony's testimony about the visits was sufficient to satisfy his burden of producing evidence that he did not intend to abandon Aubrey. Once the presumption no longer applied, it was the role of the juvenile court to evaluate the credibility of the witnesses and to resolve any conflicts in the evidence in determining whether the requisite intent to abandon had been shown. However, as the moving party, Taylor still bore the burden of proof, and merely demonstrating that Anthony's testimony lacked credibility did not prove that he intended to abandon their child.

Moreover, even accepting Taylor's account of the number and length of the visits, the uncontroverted evidence at the hearing established that the visits agreed to by Taylor were not the only efforts that Anthony made to communicate with Aubrey during the relevant time period. It is undisputed that Anthony also exchanged emails and text messages with Taylor in which he inquired about Aubrey and asked when he could see or talk to her. It is also undisputed that Taylor decided whether to permit

any contact with Aubrey during this period, and that there were times when she refused Anthony's requests for a visit or simply failed to respond.  For instance, in a June 2015 email, Anthony told Taylor that he had "been texting you for a few weeks [now] asking about [A]ubrey," and that "what you're doing keeping [A]ubrey from me isn't right."  The following month, Anthony again emailed Taylor to complain that she had blocked his telephone number and to ask when he was going to see Aubrey.  In her testimony, Taylor admitted that Anthony "definitely would ask" for Aubrey at times after they separated, and that in deciding whether to allow him to have contact with the child, "drugs and alcohol were always the issue."  While Taylor clearly had reason to be concerned about Anthony's drug and alcohol use, her decision to restrict his communication with Aubrey did not show that Anthony himself acted with an intent to abandon the child.  (See *In re H.D.*, *supra*, 35 Cal.App.5th at pp. 52-53 ["[w]hile we do not fault father for trying to protect what he saw as his daughters' best interests, it would be unfair to treat his decision to prevent contact as evidence that mother did not care to talk to her daughters" and thus intended to abandon them].)

"Section 7822 is clear—termination of parental rights is unwarranted if the failure to communicate or provide financial support is not accompanied by an intent to abandon.  [Citations]" (*In re H.D.*, *supra*, 35 Cal.App.5th at p. 53.)  Here, the juvenile court relied on Anthony's limited visitation with Aubrey between November 2014 and November 2015 in finding that he failed to overcome the presumption that he intended to abandon his child.  However, Anthony rebutted that presumption with his testimony and documentary evidence showing that he visited Aubrey when permitted by Taylor.  Additionally, the number and length of

20

Anthony's visits with the child told only a part of the story. The undisputed evidence at the hearing demonstrated that Anthony repeatedly made efforts to communicate with Aubrey during this time period, that he had a legitimate reason for trying to establish such contact through Taylor rather than Shirley and Ernest, and that Taylor feared she would lose the support of her family if she allowed Anthony to have a relationship with his child. Based on the totality of this record, the evidence did not support the juvenile court's finding that Anthony's efforts to have contact with Aubrey were mere token communications that did not overcome the statutory presumption. Because there was no substantial evidence that Anthony intended to abandon Aubrey during the period from November 2014 to November 2015, the juvenile court erred in terminating his parental rights based on abandonment under section 7822.[3]

---

[3] In light of our conclusion that the juvenile court's finding of abandonment was not supported by substantial evidence, we need not address Anthony's alternative argument that the court exceeded its jurisdiction by adjudicating the petition to terminate parental rights under section 7822 rather than section 7662. We also need not address respondents' argument that, to the extent the court should have decided the petition under section 7662, Anthony failed comply with the requirements of that statute by timely filing an action to establish that he was the presumed father of Aubrey. The record is clear that, by the time the juvenile court held the contested hearing on the petition, the dispositive issue was whether Anthony's parental rights should be terminated based on abandonment under section 7822, not whether he was a presumed father whose consent to adoption would be required under section 7662.

**DISPOSITION**

The judgment terminating Anthony's parental rights over Aubrey and declaring the child free from the custody and control of her parents is reversed.

ZELON, J.

We concur:

PERLUSS, P. J.

SEGAL, J.

Filed 04/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re AUBREY T., a Person Coming Under the Juvenile Court Law. | B296810 |
| TAYLOR T. et al.,<br><br>　　　　　　　Respondents,<br><br>　　v.<br><br>ANTHONY N.,<br><br>　　　　　　　Appellant. | (Los Angeles County Super. Ct. No. 17CCAB00018)<br><br>**ORDER MODIFYING OPINION AND CERTIFYING FOR PUBLICATION** |

THE COURT:

　　The opinion in this case filed March 23, 2020 was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request by attorney for Appellant, Anthony N., pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

　　The opinion is modified to include **L. Ernestine Fields** as attorney for Minor.

_____
PERLUSS, P. J., 　　　　　　ZELON, J., 　　　　　　SEGAL, J.