Filed 8/17/21  In re Aiden N. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re AIDEN N., a Minor. | |
| NICHOLAS R., <br><br> Petitioner and Respondent, <br><br> v. <br><br> ERIC N., <br><br> Objector and Appellant. | F081907 <br><br> (Super. Ct. No. VAD008670) <br><br> **OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Objector and Appellant.

Williams, Brodersen, Pritchett & Burke and Nicholas R. Ruiz for Petitioner and Respondent.

-ooOoo-

Appellant Eric N., biological father of the minor, appeals from the family court's order terminating his parental rights.  He contends the order must be reversed because the

court failed to make required findings, it prejudicially considered his criminal history, and failed to properly consider the minor's wishes. Eric further challenges the court's order for adoption of the minor by Nicholas R., petitioner and respondent, which was granted before the termination of Eric's parental rights became final. Because the family court was without jurisdiction to grant the adoption order when it did, the adoption order is void. However, we affirm the order terminating Eric's parental rights to minor.

*Minor's Birth and Legal Proceedings for Custody Prior to Termination of Eric's Parental Rights*

Minor was born to mother and Eric in August 2009. Mother and Eric lived together until about six months before minor's birth, when Eric was incarcerated.

In October 2009, mother filed a petition seeking custody of minor with no visitation rights for Eric. Eric was not present at the hearing on January 7, 2010, but filed an objection asking for joint custody. Mother was granted sole legal and physical custody of minor and Eric was denied visitation "pending his incarceration and until he files a motion seeking why it would be in the child's best interest to establish a relationship."

*Eric's Request for Order Modifying Custody and Visitation*

In December 2014, Eric filed a request for order in propria persona seeking to change the court orders. The matter was dropped from calendar, with the minute order citing "[n]o appearances."

Four and a half years later, in July 2019, Eric filed another request for order, this time with assistance of counsel, seeking joint legal custody and joint physical custody with a 50-50 visitation schedule. In the request, Eric stated he had "always" been involved in minor's life since birth but, because there was no existing visitation order in place, he wished to "establish one for regular visitations as oppose[d] to having visits occur at mother's discretion."

2.

Mother opposed Eric's requests.[1]  Mother declared that Eric had been "in and out of jail and/or prison related to drug trafficking" since minor's birth and failed to show it would be in minor's best interest "to establish a relationship, custody or visitation rights." Mother alleged that Eric had never provided support for minor and had not attempted to be involved in minor's life since his incarceration, which began February 27, 2016. Mother noted she had had a domestic violence restraining order preventing Eric from contact with mother and minor, which expired in September of 2013.

Eric's declaration stated that he and mother had had an agreement in which minor spent alternate weeks with him since he was eight months old, and that he had provided care and support for minor throughout that time and had always been involved in minor's life.  The declaration further stated that minor had a relationship with Eric's extended family and had spent numerous holidays and birthdays together with them.  Eric included numerous photographs of these occasions.  In August 2019, the parties were ordered to participate in "Child Custody Recommending Counseling" (CCRC) and the matter was continued to September of 2019.

In a supplemental declaration, mother admitted she allowed Eric to have supervised and then unsupervised visits with minor several times a month between 2012 and February 27, 2016, at which time Eric was arrested at his home when drugs were discovered during a probation check.  According to mother, child welfare services advised her not to allow minor further contact with Eric to prevent him from being exposed to the drug culture.  The child welfare report attached to mother's declaration stated that minor was interviewed and reported that he visited Eric "a lot," he felt safe in both mother's and Eric's homes, and he did not see drugs in either.  The report concluded

---

[1]     The opposition was filed by mother's attorney, Nicholas R., who is now married to mother and is the respondent here.

3.

that the risk to minor was "inconclusive," as it was unclear whether any drugs or paraphernalia were within minor's reach.

Mother's declaration further stated that she wanted minor to know Eric's family and allowed him to visit the family but stopped those visits in April of 2018 when minor returned home with a black eye.

A report filed by the CCRC mediator in September 2019, stated she had interviewed both mother and Eric. Mother stated that Eric had not had regular visits with minor since 2016, but she admitted she brought minor to the jail to visit Eric once in 2017. Eric reported that he had "always" had visits with minor but had not seen him since his release from prison in 2018, because mother "refused to allow him any contact."

The mediator opined that, prior to his 2016 incarceration, Eric "appears" to have had a "parental relationship" with minor and recommended that Eric and minor participate in therapeutic reunification counseling, due to the four-year break in visits.

At the September 12, 2019, hearing, the family court adopted the mediator's report and recommendations requiring Eric and minor to enroll in therapeutic reunification counseling and that both Eric and mother enroll in professional supervised visitation with Eric being the parent being supervised. The family court also ordered that mother and Eric communicate with each other through a designated app, that Eric be listed on all school emergency cards, that each parent notify the other of all medical and dental appointments at least 24 hours in advance, that mother notify Eric of any address changes at least 30 days in advance, and that both mother and Eric enroll with a professional supervised visitation provider. The order further provided that neither parent "will file a Request for Order, except on an ex parte basis, without having complied with the previous Court orders for services." A contested hearing was set for November 26, 2019.

Eric enrolled in the therapeutic reunification counseling program that same day, but as of February 20, 2020, had not yet started but was third on the waiting list. Eric enrolled in the supervised visitation program on October 31, 2019.

4.

On September 29, 2019, mother and Nicholas married.

On November 7, 2019, mother filed a request for stay of the proceedings because she was concurrently filing a petition to terminate Eric's parental rights for abandonment under Family Code[2] sections 7822, subdivision (a)(3) and 7825. A hearing was set for December 9, 2019.

Nicholas also filed a petition on November 7, 2019, to declare minor free from Eric's parental custody and control and to terminate Eric's parental rights. A hearing on the petition was set for December 18, 2019.

On November 14, 2019, the family court granted mother's request for stay pursuant to section 7807, vacated the November 26, 2019 hearing, and continued the hearing to December 20, 2019. The order stated that all orders "shall remain in full force and effect."

On December 5, 2019, Eric filed a responsive declaration to the request for stay order, refuting mother's allegations, stating he had always been involved in minor's life, that he and mother had had an arrangement for week to week visits, that he provided support, and had had video visits with minor and mother during his time in custody. Eric attached as exhibits copies of text messages between him and mother from February 28 to March 16, 2016.

Eric also claimed that, on October 6, 2018, mother called him in hysterics claiming Nicholas had physically abused her in front of minor. Eric attached copies of text messages between himself and mother referring to the event.

The scheduled December 20, 2019, contested hearing on Eric's original petition for changes to custody and visitation orders was continued multiple times and never completed due to the pendency of the termination of parental rights case.

---

[2]     All further statutory references are to the Family Code unless noted otherwise.

On February 28, 2020, the family court in the termination of parental rights case took judicial notice of all of the contents of the family law file.

*Nicholas's Petition to Terminate Eric's Parental Rights*

As noted above, Nicholas filed a petition on November 7, 2019, to terminate Eric's parental rights to minor so that Nicholas, who was now married to mother, could adopt him. The petition alleged that Eric had left minor with mother since February 27, 2016, without communication or support and with the intent to abandon him. A hearing was set for December 18, 2019.

Attached to the petition was mother's declaration in which she described Eric as not being present at minor's birth; that Eric had visits four times a month, supervised by mother from 2010 to 2013; that mother allowed Eric to take minor on his own a few days a week, every other week from 2013 to his arrest on February 27, 2016; and that he had had "no contact" from February 2016 to the present.

The following day, on November 8, 2019, mother filed an amended petition, showing herself as the petitioner, and setting forth Eric's criminal history "to prove the unfitness of [Eric]" for custody and control of minor. The petition alleged that Eric had made no attempt to be involved in minor's life since his arrest on February 27, 2016, and that Eric had left minor for more than a year without support and communication, and with the intent to abandon him.

Mother's amended declaration again highlighted Eric's criminal history and that Eric had had no contact with minor since his February 27, 2016 arrest. Mother also declared that she had married Nicholas in September of 2019 and minor had developed a relationship with Nicholas as his "father figure", and that Eric provided no child support since 2010.

On December 9, 2019, Nicholas filed a request, on behalf of himself and mother, asking that the court take judicial notice of the six different criminal proceedings involving Eric between 2007 and 2016.

6.

The December 18, 2019, hearing was continued to February 28, 2020, and counsel was appointed for minor.

A report from the court investigator, filed February 19, 2020, included interviews with mother, Eric, Nicholas, and minor.

In relevant part, mother stated during the interview that she did not believe Eric was a threat to minor because he had been absent from his life for so long, but once he filed the petition for custody and visitation, she and Nicholas rushed their wedding plans so they could protect minor and "secure their family unit" by terminating Eric's parental rights and allowing Nicholas to adopt minor.

Eric insisted that he had always "tried" to be a part of minor's life, even when incarcerated, and that it was mother who supported this relationship by setting up video visits. According to Eric, even though mother had legal custody, the two had a "mutual agreement" and had a co-parenting relationship whereby minor would spend one week with him and one with mother. Eric believed mother stopped contact once she became involved with Nicholas. Eric stated he provided mother support of $150 a week, but that mother would at times refuse to take it when she was mad at him. Eric insisted he had not left minor without communication or support and any gaps were due to mother denying him access to minor.

Nicholas told the investigator he viewed minor as his son and acted as a father figure to minor since he and mother became a couple. Nicholas felt that Eric was a "poor male example" for minor and that it would not be in minor's best interest to have a relationship with him.

According to the investigator, during her interview of minor, he "appeared nervous and uncomfortable." He told the investigator he would not want to visit Eric or Eric's relatives, he knew Eric was his father, knew that Nicholas wanted to adopt him, that he called Nicholas "dad" but did not want to answer any more questions about Eric or Eric's relatives. Minor had no interest in attending court hearings.

The investigator concluded that, under section 7822, there was no evidence of any significant attempts by Eric to communicate or visit minor since the end of 2016, when Eric's "consistent contact" ended and he filed the custody petition in July of 2019, and that the random text messages during this period were "token efforts." The investigator acknowledged "conflicting statements" as to why the contact between Eric and minor did not continue. The investigator concluded that "it appears that the termination of the birth father's rights is in the minor's best interest."

In anticipation of the February 28, 2020, hearing on the petition to terminate Eric's parental rights, mother and Nicholas filed points and authorities arguing for the termination of Eric's parental rights under three alternate theories: under sections 3040 and 3041, that granting custody to Nicholas would serve minor's best interests because he had been living with him for three years; under section 7822, that Eric had abandoned minor; and under section 7825, that Eric's criminal history established him unfit as a parent.

Eric responded that the court should exclude all information about his criminal history, pursuant to Evidence Code section 352, as not relevant and unduly prejudicial. He attached 64 pages of photographs demonstrating his relationship with minor, and he rebutted mother's contention that he had not spoken with minor since his February 2016 arrest by referencing the video calls while he was incarcerated. Eric also alleged that the court-ordered reunification services could not be legally interrupted to terminate his parental rights.

The court continued the February 28, 2020 hearing to April 2, 2020, in order to allow minor's counsel to file a report on minor's opinion, which the court stated it was "required" to consider. The hearing was eventually continued to June 4, 2020, due to COVID-19.

On March 17, 2020, the investigator confirmed that she had reviewed all documents and her recommendation had not changed.

On May 29, 2020, minor's counsel filed a brief, stating he had interviewed minor, who was now 10 years old, with mother present. Minor said he knew who his father was, and that Nicholas was not his "real" father, but that his preference was that Nicholas be his father. Minor reiterated that he did not want to be involved in the court proceedings. Counsel reported that minor had been able to continue to have contact with Eric's relatives, even during periods when Eric was absent.

Counsel reported that minor had a "healthy" parent-child relationship with Nicholas, although Nicholas was not present during the interview and the reason for counsel's statement are not stated. Minor had always lived with mother and there was no suggestion that their relationship was not close.

Counsel's opinion was that minor's best interest would be served by terminating Eric's parental rights to allow Nicholas to adopt minor.

Due to COVID-19, the contested termination hearing was finally set for September 10, 2020. Eric's brief for the hearing stated that he spoke to minor while in prison, and he attached call records as an exhibit, which consisted of 10 completed video visits in 2017 and 2018, each 20 minutes in length. He also attached screen shots of text messages as proof that he and mother communicated about minor between November of 2017 and March of 2019, as well as screen shots of text messages between mother and paternal grandmother between August 2016 and October 2018. Eric renewed his request that his criminal records be excluded under Evidence Code section 352, as more prejudicial than probative; that mother and Nicholas had interfered in his attempts to parent; and that mother had made "bad choices" in the past, including "stripping/escorting" since minor was a toddler.

Nicholas filed an exhibit list consisting of eight items: the CPS report when Eric was arrested while minor was present; mother's previously filed request for judicial

notice of Eric's criminal record; a copy of text messages between mother and Eric between December 9, 2019 and August 22, 2020; photographs of mother, minor and Nicholas; pictures from Eric's Facebook page showing drugs and gang signs; the court investigator's report filed February 21, 2020; the January 7, 2010 custody order; and the September 18, 2019 custody and visitation interim order.

After minor's counsel stated that he was not available for the scheduled trial dates, the parties agreed to allow him to submit his recommendations in writing and that his personal appearance at trial could be excused.

Eric filed a supplemental points and authorities stating that he never intended to abandon minor and never failed to visit him. He again requested that his criminal history be excluded.

*Contested Hearing*

At the contested hearing, which was eventually held October 13-14, 2020, Eric testified that he had four biological children, three of whom lived with him and whom he supported. According to Eric, he last provided child support for minor in 2016, which he did by purchasing items, before he was incarcerated, and that there never was a child support judgment. He did not provide for minor at birth as he was incarcerated but began when he was released in 2010 and minor was six months old. According to Eric, he and mother were then together for three to four years and he supported her and minor during this time. When he began serving a two-year jail term in June 2016, he left money for minor's support with his mother or his girlfriend, which mother knew about.

Eric testified to video visits with minor when minor would visit Eric's family. There were also 10 documented video visits through the jail. The last time one of these video visits occurred was in April 2018. After that, mother no longer responded to Eric's texts.

Eric testified that he knew of mother's 2010 sole custody order, but he did not request a change to that order until 2019, because mother had always allowed him access to minor. When Eric would mention the court to mother, she would cut off contact with him and his family. These breaks in contact were short and they would then resume the contact, making Eric believe he did not need a court order.

Eric acknowledged that he had not seen minor in person since 2016. When he was released from prison in June 2018, he went into a program with a black-out period and he was not allowed to communicate with anyone for 90 days. Once released from the program, Eric began texting mother to make arrangements to see minor, but she did not respond, except once in October 2018, when she called to say Nicholas had beaten her. Eric tried to contact mother via her friends and his own attorney. He retained counsel in February 2019 to file for a custody petition but did not realize he needed to pay the full estimated fee before the petition would be filed. It was eventually filed in July 2019.

Mother testified that she was 19 when minor was born. She and Eric had been together since she was 17 and they were arrested for selling drugs, but only Eric was convicted. Eric was released from custody when minor was 10 or 11 months old. Mother claimed Eric never provided financial support for minor and never offered.

Mother testified that she obtained the custody order in 2010 and allowed Eric visits, but that they never had "an agreement." She allowed Eric to visit minor from 2013 until he was arrested again in 2016. During the later visits, mother would allow minor to go with Eric since Eric's parents were present. Mother acknowledged that minor participated in multiple jail video visits, which she set up because she wanted minor to know who his father was.

During the time Eric was in custody from 2016 to 2018, he never wrote letters and never asked mother to bring minor for in person visits. Mother was not aware of any efforts on Eric's part to contact her after he was released. Mother claimed never to have

11.

gotten any text message from Eric. She had not told Eric when she moved because she had sole custody of minor and did not have any reason to do so.

Mother thought the last contact minor had with Eric was in 2017 or 2018 during a jail video call. The last time Eric saw minor in person was in February 2016, the day he was arrested. After Eric's arrest, the CPS worker informed mother that she should not allow Eric unsupervised visits with minor.

Maternal grandmother and maternal aunt both testified that Eric was not present at birthdays, holidays, or other family celebrations. Eric's girlfriend, with whom he shared children, testified that Eric continually attempted to contact mother and that he left about $15,000 for minor's support when he went to prison, however, she never told mother about the money because she would not communicate with her. Prior to February 2016, minor spent alternate weeks at their home. Other members of Eric's extended family testified to their frequent contact with minor. After Eric's 2016 arrest, minor continued to visit with members of Eric's family, but those visits stopped in April of 2018.

Nicholas testified that Eric made no effort to communicate with minor for "three going on four years."

*Trial Court Decision*

In its decision October 14, 2020, the court terminated Eric's parental rights, finding that there was "clear and convincing evidence" of Eric's abandonment of minor, in his failure to contact him and failure to support him for the statutory period. Factual findings by the trial court included minor's "clear preference" to have Nicholas, who had provided a parental roll since minor was six, as his father. The court did not find credible Eric's claims of week to week custody, that he was denied access to minor, or that he offered money to mother which she refused. The court found that there was no substantial contact between Eric and minor from 2016 to 2019, that there was no evidence of financial support "ever", it found none of Eric's family witnesses credible, and that Eric failed to seek visitation for over a year after he was released from custody

12.

and that he could have filed his petition at any time. The court also found that Eric's involvement in the "drug trade" was "overwhelming."

Acting in propria persona, Eric filed a timely notice of appeal from the October 14, 2020, order terminating his parental rights, which was served on all parties by the Tulare County Superior Court Clerk.

Minor was subsequently adopted by Nicholas on November 13, 2020.

## DISCUSSION

### I. ADOPTION ORDER

Eric contends first that the November 13, 2020 order, granting the adoption of minor by Nicholas, is void because the order terminating Eric's parental rights, dated October 15, 2020, was not yet final when the adoption order was granted. We agree.

Section 7894 provides: "(a) An order and judgment of the court declaring a child free from the custody and control of a parent or parents under this part is conclusive and binding upon the child, upon the parent or parents, and upon all other persons who have been served with citations by publications or otherwise provided in this part. [¶] (b) After making the order and judgment, the court has no power to set aside, change, or modify it. [¶] (c) Nothing in this section limits the right to appeal from the order and judgment."

We previously addressed this same issue in *In re Brittany H.* (1988) 198 Cal.App.3d 533, 552-553, in which the order terminating parental rights and adoption order were signed the same day. In *Brittany H.*, we held that, because the statutory requirements for an adoption are jurisdictional and consent of the natural parent is a jurisdictional prerequisite to adoption (see *Adoption of Barnett* (1960) 54 Cal.2d 370, 377; *Adoption of Driscoll* (1969) 269 Cal.App.2d 735, 738), the decree of adoption was void.

Here, the notice of appeal was timely filed on October 20, 2020, and served the next day. The judgment terminating parental rights was therefore not final at the time the

13.

decree of adoption was signed and therefore the trial court had no jurisdiction to grant the adoption and the decree of adoption is void.

II. FAMILY CODE SECTION 7822

Eric contends the trial court's finding that he abandoned minor pursuant to section 7822 was not supported by sufficient evidence and that the order granting the petition must be reversed. We disagree.

Section 7800 et seq. governs proceedings to have a minor child declared free from a parent's custody and control. (§ 7802; *Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1009 (*Allison C.*).) "A declaration of freedom from parental custody and control ... terminates all parental rights and responsibilities with regard to the child." (§ 7803.) A court may declare a child free from parental custody and control if the parent has abandoned the child. (§ 7822; *Allison C., supra,* p. 1010.) Abandonment may occur when "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).) " 'The ... failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon. If the parent ... ha[s] made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent....' (§ 7822, subd. (b).)" (*Allison C., supra,* at p. 1010.) "The parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period." (*In re Amy A.* (2005) 132 Cal.App.4th 63, 68.) It is not required that the statutory period be the period immediately preceding the filing of the petition. (*Adoption of A.B.* (2016) 2 Cal.App.5th 912, 922.)

We review the family court's findings under section 7822 for substantial evidence. (*In re Amy A., supra,* 132 Cal.App.4th at p. 67.) " 'An appellate court is not empowered to disturb a decree adjudging that a minor is an abandoned child if the evidence is legally

14.

sufficient to support the finding of fact as to the abandonment [citations].' " (*In re Brittany H., supra,* 198 Cal.App.3d at p. 549.) "In determining if substantial evidence exists, we consider the evidence in a manner that favors the order being challenged." (*Adoption of A.B., supra,* 2 Cal.App.5th at p. 922.) We do not evaluate "the credibility of witnesses, resolve conflicts in the evidence or determine the weight of the evidence." (*In re E.M.* (2014) 228 Cal.App.4th 828, 839.) On appeal, the appellant bears the burden of establishing insufficient evidence to support the trial court's findings. (*Ibid.*) We must account for the clear and convincing standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

Eric argues that, while the trial court in its ruling found " 'abandon, failure to contact, failure to support for the statutory period,' " it failed to make "the necessary and foundational finding" that Eric " 'left' " minor and it failed to designate the dates of the statutory period for which it was finding the abandonment. We disagree.

We first address the issue of whether Eric "left" minor within the meaning of section 7822. While a parent will not be found to have voluntarily left a child in the care and custody of another where the child is effectively "taken" from the parent by court order, voluntary inaction on the part of the parent can convert a "taking" to a "leaving" with intent to abandon the child. (*In re Marriage of Jill & Victor D.* (2010) 185 Cal.App.4th 491, 504.) Indeed, "[n]umerous appellate decisions have long agreed that the leaving-with-intent-to-abandon-the-child requirement of section 7822 can be established by evidence of a parent's voluntary inaction after an order granting primary care and custody to the other parent." (*Ibid.*)

Eric argues that he cannot be found to have "left" minor because he was judicially prevented from having any contact. While he acknowledges that parental inaction after such an order may constitute a leaving with intent to abandon, he contends that did not happen here, as evidenced by the early visits with minor and the later video calls while he was in custody.

15.

The uncontroverted facts in the present case are that Eric last saw minor in person on February 26, 2016, the day he was arrested. Eric and minor had approximately 10 video calls while he was in custody between 2016 and when he was released in 2018, but no contact since. There is sufficient evidence to find that Eric "left" minor by his failure to oppose the petition for custody, which was granted in January of 2010, and by his failing to act and exercise his legal right to petition for custody or visitation in the face of a judicial order. (*Amy A., supra,* 132 Cal.App.4th at p. 70 [substantial evidence supported finding that the father "left" the child because "repeated inaction in the face of the custody order" demonstrated he "voluntarily surrendered his parental role"]; see also *In re Jacqueline H.* (1979) 94 Cal.App.3d 808, 816 [concluding mother "left" child when she did not seriously attempt to obtain visitation or a change in the order removing the child from her care].) Eric abandoned his 2014 change order request, and following his 2016 arrest, he could have made specific requests to see minor and could have exercised his legal rights to petition for child custody or visitation, but failed to do so until July of 2019, when minor was almost 10 years old.

Eric does not appear to contest that he left minor without any provisions for support since February of 2016.

Eric also characterizes the trial court's focus on his criminal record as more prejudicial than probative. We disagree, as we do not find that the trial court used this evidence in an inappropriate way. Under the facts of the present case, Eric's repeated absences were at times due to his incarcerations. In its ruling, the trial court summarized Eric's lengthy criminal record and stated that his arrest and conviction records showed his priorities to be drug sales and therefore "your child by definition really can't be." However, this was only a part of what the court considered in its decision, and therefore the court reasonably considered Eric's criminal background in the context of whether Eric "left" minor within the meaning of section 7822.

We next turn to the evidence supporting Eric's intent to abandon for the required statutory period. " ' "[The] question whether [an] intent to abandon exists and whether it has existed for the statutory period is a question of fact for the trial court, to be determined upon all the facts and circumstances of the case." ' " (*In re E.M., supra,* 228 Cal.App.4th at p. 839.)

In determining a parent's intent to abandon, the trial court "must objectively measure the parent's conduct, 'consider[ing] not only the number and frequency of his or her efforts to communicate with the child, but the genuineness of' the parent's efforts." (*Adoption of A.B., supra,* 2 Cal.App.5th at p. 923.) There is no requirement that a parent intend to abandon the child permanently; it is only required that the parent intend to abandon the child for the relevant statutory period. (*In re H.D.* (2019) 35 Cal.App.5th 42, 52.) The Legislature has determined that a child's need for stability cannot be postponed indefinitely to conform to an absent parent's plans to reestablish contact "in the distant future." (*In re Daniel M.* (1993) 16 Cal.App.4th 878, 884.)

Under section 7822, subdivision (b), a parent's failure to provide support or communication with his or her child is presumptive evidence of an intent to abandon and his or her token efforts will not overcome this statutory presumption. Eric contends he rebutted the presumption because, as he argued above, there is insufficient evidence that he "left" minor. We have already rejected this argument.

Again, there is substantial evidence to support the trial court's finding that Eric had not seen minor in person since February of 2016, that the ten 20-minute video visits over the course of two years while in custody were "token," and that Eric had never provided minor support, thereby intending to abandon minor for the required statutory period. While the trial court did not make a specific finding about the one-year date constituting the required statutory period, it did find that "no substantial contact" occurred "between 2016 to 2019." It is clear from the evidence that this period stretched back to Eric's arrest in February of 2016. The trial court was not required to give any

17.

weight to Eric's filing of a petition for custody in July of 2019, because the one-year period required by section 7822 had already elapsed.

The court's findings that Eric intended to abandon minor for the statutory period is supported by substantial evidence and we reject Eric's claim to the contrary.

III.    FAMILY CODE SECTION 7890

Eric also contends that the trial court failed to take into account minor's wishes on the proceedings about the parents, and the child's preference as to custody. We disagree.

The best interests of a child are "paramount in interpreting and implementing the statutory scheme" governing when and how to free a child from parental custody and control. (*Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 162.) To this end, the Legislature has declared the court "shall consider the wishes of the child" when the child is 10 years of age or older. (§§ 7890; 7891, subd. (a).) Minor's counsel can waive this requirement. (§ 7891, subd. (b).)

Minor's counsel interviewed minor, who expressed no close connection with Eric. In addition, minor also expressed his wishes that the relationship he had had with Nicholas for the last five years be legally formalized.

Eric contends minor's statements to counsel cannot be considered because mother was present during the interview. However, minor made similar statements during the court investigator's interview when mother was not present. It was during his interview with the court investigator that minor specifically stated he did not want to visit Eric or Eric's side of the family and indicated that he wished to be adopted by Nicholas.

Minor's interviews constitute substantial evidence supporting the trial court's decision that terminating Eric's parental rights and freeing minor for adoption was in his best interest.

## DISPOSITION

The adoption decree is void for lack of jurisdiction.  The order freeing the minor from Eric's custody and control and terminating Eric's parental rights is affirmed.


FRANSON, J.

WE CONCUR:


DETJEN, Acting P.J.


SMITH, J.