Filed 6/30/22  Adoption of K.T. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| Adoption of K. T., a Minor. | C095847 |
| M. B., | (Super. Ct. No. 21CVSA6630) |
| Plaintiff and Respondent, | |
| v. | |
| K. T., | |
| Defendant and Appellant. | |

        M. B. (respondent) filed a petition seeking to have his stepson K. T., declared free from parental custody of K. T.'s biological father (appellant) under Family Code[1] section 7822.  The court granted the petition.  Appellant appeals, contending insufficient evidence supports the court's findings.  We affirm.

---

[1]        Undesignated section references are to the Family Code.

1

BACKGROUND

K. T.'s mother (mother) met appellant when she was 17 years old; they began dating. In 2013, mother learned she was pregnant with K. T. Mother was still living with her own parents and when they learned about the pregnancy, mother's parents were "very upset" with her. Mother and appellant thus decided to live with appellant's mother, "Lynn."

K. T. was born in 2014. Mother and appellant were never married but appellant's name is listed on the birth certificate. Following K. T.'s birth, appellant never executed a voluntary declaration of paternity and the court never issued an order establishing paternity.

In 2015, after realizing the extent of appellant's heroin addiction, mother moved out of Lynn's home and moved back in with her parents; she took K. T. with her. Lynn also moved out but appellant remained in their mobile home as a squatter until he was evicted. Over the next two years, appellant would contact mother, often for money. When mother refused to give appellant money, he would ask to see K. T.; ultimately, those visits were usually a "last ditch effort to get money from [mother]." Appellant saw K. T. in January 2017, just before K. T. turned three. Appellant has not seen K. T. since.

After K. T. turned three, mother would hear from appellant about once a year. Appellant would call her from a "burner phone" or she would get a message through Facebook. When he did reach out, appellant was "sober and in jail or coming off a high somewhere on the streets." If he was in jail, appellant would ask mother if he could see K. T. when he got out of jail. If appellant was not in jail, he would ask to meet mother so she could give him money.

In March 2017, mother met respondent. They began dating, and in September 2017, mother and K. T. moved in with respondent. Two years later, mother and respondent began looking into respondent adopting K. T. Mother and respondent

2

intended to marry, but were in no hurry (they ultimately became engaged in December 2020 and married in May 2021).

On March 15, 2020, appellant entered a rehabilitation program for drugs and alcohol. While he was in the program, appellant sent mother a letter apologizing for his conduct, he was "hoping to do better." He also told mother he was moving to Washington for work. Appellant said he "met a girl." He also hoped K. T. was well and told mother he "wanted to see him someday." For Christmas in 2020, appellant sent a card to mother, respondent, and K. T., wishing them well. He also sent K. T. a stuffed bear.

At the beginning of 2021, mother spoke to appellant for the first time since 2017. She asked appellant if he would "sign over adoption papers." Appellant refused. A few months later, on March 18, 2021, appellant graduated from his rehabilitation program; he made no effort to see K. T.

On June 9, 2021, respondent filed a petition to declare K. T. free from appellant's parental control and custody so that respondent could adopt him. In support of his petition, respondent argued appellant had abandoned K. T. "into the care of his mother" for more than one year. Appellant opposed the petition; the court appointed counsel and an investigator for appellant to make a recommendation on the petition.

Following her investigation, the court appointed investigator recommended the petition to declare K. T. free from appellant's parental control and custody be granted. In support of her recommendation, the investigator noted that K. T. (then seven years old) "only knows" respondent as his father. She acknowledged appellant's sober date in March 2020, and congratulated his efforts to "better his life," however, she found appellant had not seen K. T. in "over three years." Three years, she concluded, "was a sufficient amount of time for [appellant] to make the changes he needed to make to be an active parent in [K. T.]'s life."

On October 29, 2021, the trial court heard respondent's petition. Appellant testified he had been using drugs since high school and it was not until March 2020, that he found the resolve to get clean. He acknowledged he had not seen K. T. in "over three years." He also admitted that he made no attempt to see K. T. until March 2021, when he reached out to mother and respondent after he graduated from the program and told them he was "getting [his] life together."

According to appellant, he never intended to abandon K. T. Appellant's addiction prevented him from "really participating in [K. T.]'s life," and it also prevented him from supporting K. T. financially. At the time of the hearing, appellant had been clean and sober for 19 months. He had been able to hold down a full-time job since he graduated from the program; he completed "DUI school" and had his driver's license reinstated; he was engaged to be married; and his fiancée was pregnant. Appellant thought it would benefit K. T. to have "two father figures in his life."

After issuing a tentative decision on December 28, 2021, on January 19, 2022, the court entered judgment declaring K. T. free from appellant's parental control and custody. The court found clear and convincing evidence that appellant left K. T. in the custody and care of mother "for a period of over one year without any provision for the child's support, with the intent to abandon the child." The court also found K. T. adoptable and the judgment to be in his best interests.

Appellant timely appealed.

## DISCUSSION

### A

#### *Legal Principles*

Section 7800 et seq. governs proceedings to have a minor child declared free from a parent's custody and control. (§ 7802; *Adoption of Allison C.* (2008) 164 Cal.App.4th 1004, 1009 (*Allison C.*).) "A declaration of freedom from parental custody and control . . . terminates all parental rights and responsibilities with regard to the child." (§ 7803.)

4

A court may declare a child free from parental custody and control if the parent has abandoned the child.  (§ 7822; *Allison C.*, *supra*, 164 Cal.App.4th at p. 1010.)  Abandonment may occur when "[o]ne parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child."  (§ 7822, subd. (a)(3).)  " 'The . . . failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon.  If the parent . . . ha[s] made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent . . . .' "  (§ 7822, subd. (b).)  "The parent need not intend to abandon the child permanently; rather, it is sufficient that the parent had the intent to abandon the child during the statutory period."  (*In re Amy A.* (2005) 132 Cal.App.4th 63, 68.)

We review the family court's findings under section 7822 for substantial evidence, bearing in mind the clear and convincing standard of proof.  (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)  " 'An appellate court is not empowered to disturb a decree adjudging that a minor is an abandoned child if the evidence is legally sufficient to support the finding of fact as to the abandonment.' "  (*In re Brittany H.* (1988) 198 Cal.App.3d 533, 549.)  Abandonment and intent are questions of fact for the trial judge and the trial judge's decision when supported by substantial evidence is binding upon the reviewing court.  (*Allison C.*, *supra*, 164 Cal.App.4th at p. 1011.)  "In determining if substantial evidence exists, we consider the evidence in a manner that favors the order being challenged."  (*Adoption of A.B.* (2016) 2 Cal.App.5th 912, 922.)  We do not evaluate "the credibility of witnesses, resolve conflicts in the evidence or determine the weight of the evidence."  (*In re E.M.* (2014) 228 Cal.App.4th 828, 839.)  On appeal, the appellant bears the burden of establishing insufficient evidence to support the trial court's findings.  (*Ibid.*)

B

*Appellant Abandoned The Child*

Appellant concedes he left K. T. with mother for the statutory period, but argues there is insufficient evidence he intended to abandon him.  Specifically, he argues it was not his choice to leave K. T.  It was his drug addiction that isolated him from K. T. and prevented him from providing support.  Appellant relies on the decision in *In re H.D.* (2019) 35 Cal.App.5th 42, to support his argument.  We are not persuaded.

In *H.D.*, the respondent father (father) went to court ex parte to obtain custody based on the appellant mother's (mother) "active alcohol and methamphetamine addictions." (*In re H.D.*, *supra*, 35 Cal.App.5th at p. 51.)  The mother admitted that a few months prior to the respondent's request, she stopped trying to contact the children because the father was not allowing contact due to her addictions.  She instead decided to focus on getting healthy and fighting for custody in family court.  (*Id.* at p. 46.)  The mother agreed to the custody order and to seek treatment for her addictions.  She thereafter immediately sought treatment, got sober, and returned to court for modification of the custody order.  (*Ibid.*)  The mother failed to communicate or support her daughters for the statutory period while she was in treatment and working on her sobriety.  (*Id.* at p. 52.)  She testified she let the father assume custody "only for so long as it took her to treat her addictions and return to family court to seek modification of the custody arrangement." (*Ibid.*)  Several family members corroborated this testimony.  (*Ibid.*)  The trial court found the mother had abandoned her children, relying solely on the presumption.  (*Id.* at p. 53.)

The appellate court in *H.D.* reversed, finding the court erred by relying on the presumption and "ignor[ing] the overwhelming undisputed evidence [the] mother actually never intended to abandon her daughters and was actively working to reunite with them." (*In re H.D.*, *supra*, 35 Cal.App.5th at p. 53.)  The appellate court noted the "weightiest evidence of intent . . . was [the] mother's] actions[, as a]fter becoming and

remaining sober, [the] mother wasted no time in returning to family court and seeking to regain custody." (*Id*. at p. 52.) The facts here are quite different.

Appellant has made no genuine effort to communicate or reunite with K. T. since mother left appellant in 2015, taking K. T. with her. At that time, appellant was in the grip of his heroin addiction, but he waited five years to seek treatment. He made token efforts to see K. T. between 2015 and 2017, but even those efforts appear to have been for the sole purpose of getting money from mother. After 2017, appellant stopped making even token efforts to see or reach out to K. T. until Christmas 2020, when he sent a card and a stuffed bear.

By the time of the hearing on respondent's petition, appellant had been clean and sober for 19 months. He had graduated from rehabilitation; obtained (and maintained) full-time employment; earned his driver's license back; become engaged; and had another child on the way. Yet, in those 19 months, he made no effort to see, communicate with, or offer support for K. T. So, by the time of the hearing, appellant had not seen or spoken to K. T. in over four years.

In short, appellant is not, as he argues, similarly situated to the mother in *H.D.* He has not demonstrated any meaningful effort to contact or visit K. T. either before, during, or after treating his addiction. He did not demonstrate "diligence in treating [his] addiction[]," and he made no effort to obtain custody or visitation in family court after he completed his rehabilitation. (See *In re H.D.*, *supra*, 35 Cal.App.5th at p. 53.)

Moreover, appellant never offered to support K. T. in any way, no matter how small, even after he was working a full-time job. Appellant argues that mother's failure to ask for support mitigates his failure to support K. T. Appellant cites no authority to support that argument. Indeed, we can think of no reasoned legal theory or policy supporting a claim that would allow appellant to minimize abandoning his child by blaming mother for failing to ask him for help. We thus find sufficient evidence supports the trial court's finding of abandonment.

DISPOSITION

The judgment freeing K. T. from appellant's parental custody and control is affirmed.

/s/_____
Robie, Acting P. J.

We concur:

/s/_____
Mauro, J.

/s/_____
Renner, J.